46 N.J. Super. 543 (1957)
135 A.2d 35
IN THE MATTER OF APPLICATION OF WEST JERSEY AND SEASHORE RAILROAD COMPANY FOR APPROVAL OF THE SALE OF LAND SITUATE IN THE CITY OF CAMDEN, CAMDEN COUNTY, NEW JERSEY, CONTAINING 2.178 ACRES.
Superior Court of New Jersey, Appellate Division.
Argued September 16, 1957.
Decided October 9, 1957.
*544 Before Judges CLAPP, JAYNE and HUGHES.
Mr. Meyer L. Sakin argued the cause for appellant Fred Siris (Mr. Jules E. Tepper, attorney).
Mr. Howard T. Rosen, Deputy Attorney-General, argued the cause for respondent (Mr. Grover C. Richman, Jr., Attorney-General of New Jersey, attorney).
*545 The opinion of the court was delivered by HUGHES, J.S.C.
The Board of Public Utility Commissioners denied its approval, required by R.S. 48:3-7, of the sale and conveyance of certain real property owned by a public utility, and its decision comes before us on the appeal of the disappointed intending vendee. The West Jersey and Seashore Railroad Company had petitioned for sanction of its plan to sell to him land which it had abandoned and considered unusable for railroad purposes, but has withdrawn from the scene of present dispute by its failure to appeal the adverse ruling. The appellant, who had been admitted as an intervening party in interest in the administrative proceeding, thus stands alone in pressing his appellate challenge under R.R. 4:88-8 of the validity of such decision.
The burden of persuasion in such instance, unaffected in any way by the non-joinder of the railroad in the appeal, but because of the administrative nature of the decision sought to be reversed, is not to be characterized as an easy one. Despite our independent fact-finding power (R.R. 4:88-13; cf. Pennsylvania Railroad Co. v. Department of Public Utilities, Board of Public Utility Commissioners, 14 N.J. 411, 433 (1954)) (a permissive role invoked with the greatest circumspection in the necessary interest of justice, and not to be deemed, through speculative perversion of that rule, the practical equivalent of a trial de novo (In re Larsen, 17 N.J. Super. 564 (App. Div. 1952); In re Application of Hackensack Water Co., 41 N.J. Super. 408 (App. Div. 1956)), the making of original factual findings and the reaching of policy determinations are designedly confided by the Legislature to the experienced administrative judgment of the Board, and the exercise of such judgment carries with it an aura of presumptive correctness. In re Greenville Bus Co., 17 N.J. 131 (1954). Hence, on judicial review, the court does not substitute its independent judgment for that of the Board, but seeks to determine whether the evidence before that body *546 furnished a reasonable basis for its action, i.e., for the exercise of its judgment underlying the disputed determination (New Jersey Power & Light Co. v. Borough of Butler, 4 N.J. Super. 270 (App. Div. 1949)), and this for the reason, as expressed by a learned writer on behalf of our former Supreme Court, that "* * * The Legislature has committed the resolution of such questions to the experienced judgment of the Utility Board; and if the determination of that tribunal has a reasonable basis in the evidence, and is free of the vice of arbitrariness, this court cannot substitute its judgment therefor." Rahway Valley R. Co. v. Board of Public Utility Commissioners, 127 N.J.L. 164 (Sup. Ct. 1941). It follows that, unless the adjudication below impinges upon constitutional right, or appears to be ultra vires the statutory grant, our appellate function here calls for scrutiny of the evidence before the Board, but subject to the limited conclusional perspective mentioned.
The West Jersey and Seashore Railroad Company owns a parcel of land, a little more than two acres, at the northwest corner of 7th and Linden Streets in Camden. An old branch of the railroad had previously run thereon, but having been abandoned and the trackage torn up, pursuant to the requisite previous authority of the Board, there was no further need of this land for utility purposes. There is no issue here, accordingly, as to one of the two considerations involved in the statutory scrutiny by the Board of the disposition of such property, i.e., the continued physical operation of the railroad. In upholding the constitutionality of that section of the Public Utilities Act of 1911 (L. 1911, c. 195, § 18, p. 380, R.S. 48:3-1 et seq.) inhibiting certain acts by a public utility, including, inter alia, the sale, lease, mortgage or other disposal of its property without prior approval of the Board, our former Court of Errors and Appeals emphasized the relationship between such transactions and the public interest, namely, "the interest of the State and its citizens." West Jersey & Seashore R. Co. v. Board of Public Utility Commissioners, 87 N.J.L. 170 (E. & A. 1915). That interest manifestly embraces the *547 price at which such property is to be sold, inasmuch as the waste or dissipation of utility assets, such as to undermine its financial structure, would pose a threat to the efficient functioning of such utility for the benefit of the public, and also would bear upon its rate base and the consequent cost to the public of its services. To protect this public interest, and within its rule-making power under R.S. 48:2-12, the Board had adopted its Conference Order No. 23 outlining the procedural steps for approval of such sales, which include in the case of property of the value here involved, newspaper advertisement of the property for sale within 90 days of the petition for approval of such sale. It is the intent and purpose of this requirement, of course, to induce publicity as to the proposed sale of property by a utility, in order to be assured that it is being sold for the best price obtainable. While the validity of this requirement in the frame of the legislative design is not here challenged, the appellant questions its application in support of the disapproval of the sale.
Incident to the expected abandonment of the property, publicly bruited long before the event, there had been inquiries from possible purchasers including the appellant, but these were turned aside by the railroad until its plans for abandonment became final. Late in 1953 and in 1954, overtures as to sale were made by the railroad and there was local news comment that the property had been abandoned and would be sold. After several unsuccessful negotiations with others, the railroad on September 7, 1954 entered into an agreement to sell the property for $50,000 to the appellant, subject to the approval of its own board of directors and of the Board of Public Utility Commissioners. Later, searches made by the appellant indicated the presence of title encroachments which induced the railroad to modify this agreement by reducing the price to $46,000. Meanwhile, appellant had spent some $24,700 to remove encroachments by acquiring certain titles, although he admittedly realized at all times that the sale to him was contingent upon Board approval.
*548 Railroad property is not sold with undue haste, apparently, for it was not until June 1956 that the utility petitioned for approval of this sale. The interval seems to have been occupied by the routing of the transaction in a somewhat labyrinthine course to elicit concurrence of various executive officers of connected railroads, and it was not until May 15, 1956 that there occurred the definitive approval by resolution of the railroad's board of directors. In purported compliance with Conference Order No. 23, supra, the railroad had inserted in the public press on April 6, 1956 a brief advertisement justly characterized by the Board decision as "not highly informative" and "most inconspicuous." Purportedly as a result of this advertisement one, Henry A. Berger, made inquiry and on April 11, 1956 transmitted a written offer of $65,500 to be paid in cash for the property. After some delay the railroad determined, nevertheless, to honor its previous commitment with appellant and so advised Berger. Although given an opportunity by the railroad to do so, the appellant had declined to increase his offer, choosing to stand upon his existing rights. At the hearing before the Board, Berger repeated his offer, and our view of the evidence fully supports the finding of the Board that this offer was a valid and subsisting one. The railroad conceded that Berger was willing to pay the price offered for the property subject to the encroachments which have been mentioned, and it was, admittedly, the highest and best offer ever received. In his testimony before the Board, appellant stated that the property purchased by him for $24,700 for the removal of the encroachments mentioned was, independently, of profit to him, and this testimony removes that element of hardship from the case, although we do not by any means suggest that its existence would justify, in these circumstances, an opposite result.
Our consideration of the whole of the evidence leaves us in agreement with the determination of the Board denying its approval on the two bases therein set forth, first, and most importantly, that the sale price for which approval was *549 sought was not the best price obtainable for the property, and secondly, that under all of the circumstances, the brief newspaper advertisement amounted to an attempt to "circumvent and avoid the purposes of" the regulation referred to. The railroad's adherence to its "moral obligation" to appellant, in view of his expenditures in clearing the title to the property, in no way militates to the interest of the public, although the situation might differ if the disparity in amount were inconsequential. The other points urged by appellant, involving the bona fides of Berger and his motives, his agency status with the ultimate intending purchaser represented by him, and the like, are of no effect in the circumstances, involving as they do matters peculiarly within the province of the judgment of the Board. The Board action seems to us not only entirely correct, but certainly legally unassailable within the purview of our appellate authority, because supported by evidence substantial on its face. The utilities law was very young in this State when our former highest court declined to "substitute its own judgment for that of this legislative agent, and compel it to act upon the application for * * * approval in a specific way." West Jersey & Seashore R.R. Co. v. Board of Public Utility Commissioners, supra.
Noteworthy in the rejection of the railroad's application was the Board's adherence to its own settled administrative construction of the regulation mentioned and of its purpose, and this interpretation is entitled to controlling weight unless plainly erroneous. Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945); In re Schneider, 12 N.J. Super. 449 (App. Div. 1951).
The decision of the Board of Public Utility Commissioners is affirmed.