81 N.J. Super. 395 (1963)
195 A.2d 660
CHARLOTTE POLAND AND JOSEPH O. POLAND, HER HUSBAND, PLAINTIFFS-RESPONDENTS,
v.
NED J. PARSEKIAN, DIRECTOR, DIVISION OF MOTOR VEHICLES, DEPARTMENT OF LAW AND PUBLIC SAFETY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1963.
Decided December 5, 1963.
*398 Before Judges GAULKIN, FOLEY and LEWIS.
Mr. Richard H. Hughes argued the cause for appellant (Mr. Irving H. Lewis, attorney).
Mr. Peter Fless, Jr. argued the cause for respondents (Mr. Jack DiNola, attorney).
The opinion of the court was delivered by FOLEY, J.A.D.
This is a negligence case brought under the authority of N.J.S.A. 39:6-78 which, in circumstances here presented, permits an action against the Director of the Division of Motor Vehicles by one injured in an accident arising out of the ownership, use or maintenance of a motor vehicle when the identity of the vehicle and the owner and operator thereof cannot be ascertained.
The complaint is in two counts. Charlotte Poland brought suit for personal injuries; her husband sought consequential damages for out-of-pocket losses and deprivation of the services and consortium of his wife. The jury returned a single verdict of $10,000 on both counts. Subsequently, defendant *399 moved for a new trial upon the ground that the verdict was "a result of mistake passion partiality or prejudice and against the weight of the evidence," see R.R. 4:61-1, and for a judgment notwithstanding the verdict upon the ground that "the plaintiff was guilty of contributory negligence as a matter of law." R.R. 4:51-2(a). The record of the ruling on the motions indicates that it then was the court's intention to set aside the verdict "with relation to damages only," the court directing counsel to prepare an order to that effect. However, the order presented by defendant's attorney, consented to as to form by plaintiffs' attorney and executed by the judge, merely directed that "defendant's motion be and hereby is dismissed."
The appeal is predicated upon the contentions that: (1) a motion made for dismissal on plaintiffs' opening should have been granted; (2) plaintiff failed to make out a prima facie case and, thus, defendant's motion for dismissal at the close of her evidence should have been granted; (3) judgment n.o.v. should have been entered upon the ground that plaintiff was guilty of contributory negligence as a matter of law; and (4) the joint verdict in favor of the two plaintiffs is defective on its face.
Our present practice does not favor a dismissal on plaintiff's opening to the jury. A motion for dismissal then made should not be granted unless the facts are undisputed and the law free from doubt. Passaic Valley Sewerage Com'rs v. Geo. M. Brewster, etc., Inc., 32 N.J. 595, 606 (1960); Farkas v. Middlesex Board of Freeholders, 49 N.J. Super. 363, 367 (App. Div. 1958). Moreover, even when the court errs in denying a motion addressed to the opening, the error is cured if evidence subsequently adduced raised factual issues to be submitted to the jury. Liberatori v. Yellow Cab Co. of Philadelphia, 35 N.J. Super. 470, 474 (App. Div. 1955). See also Glass v. American Stores Co., Inc., 110 N.J.L. 152, 155 (E. & A. 1933). The case is rare indeed where the interests of justice will not be served by withholding action on, or by denying, the motion and receiving proof. Passaic Valley, *400 supra, at pp. 606-607; Sherman v. Josephson, 44 N.J. Super. 419, 426 (App. Div. 1957).
A motion for dismissal made at the close of plaintiff's case admits the truth of plaintiff's evidence and every inference of fact that can be legitimately drawn therefrom which is favorable to the plaintiff, and denies only its sufficiency in law. Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 170 (1955).
Mrs. Poland's testimony, when viewed in a light most favorable to her, would permit a jury to conclude that while standing on the shoulder of Route 130, a four-lane highway, and seeking a ride, she was struck by a passing vehicle which was not brought to a stop after the accident, notwithstanding that the driver knew or should have known of the collision. Such conclusions, if made, justified an inference of negligence on the part of the hit-and-run driver. The court, therefore, properly denied the motion for judgment made at the close of plaintiffs' case.
Defendant did not move for judgment of involuntary dismissal at the close of the entire case. As we have noted, he subsequently moved for judgment n.o.v. in conjunction with his alternate motion for a new trial. Defendant now argues that "at the conclusion of the entire case, or on motion for judgment n.o.v. the court should have taken the case sub judice from the consideration of the jury." Under this point he limits his argument to a contention that the proofs conclusively established that the plaintiff was contributorily negligent as a matter of law.
R.R. 4:51-2 provides in part:
"(a) If a motion for judgment is made at the close of all the evidence, the court may reserve decision on the motion, submit the case to the jury and decide the motion either before the verdict or within 10 days thereafter or if no verdict is returned, within 10 days after the jury's discharge. If the motion is denied and the case has been submitted to the jury, the motion may be renewed within 10 days after the verdict or the discharge of the jury. The court may enter judgment in accordance with the motion or, if the ends of justice so require, may order a new trial."
*401 On this appeal plaintiff does not challenge defendant's right to move for judgment n.o.v. in the absence of a motion for judgment at the close of the entire case and a reservation of decision thereon. However, in the interest of orderly practice and with a view to what we deem to be the purpose of R.R. 4:51-2, we feel compelled to do so. The rule, which is modeled after Rule 50 of the Federal Rules of Civil Procedure, was designed to permit the trial court to submit a case to the jury for factual determination where a motion properly made at the close of the entire case raised complex questions dealing with the legal sufficiency of the proofs offered by one of the parties. The objective in view was to grant repose to the controversy if the jury decided the case in the movant's favor or, alternatively, if the jury found against the movant, to permit the trial judge upon further reflection to decide the legal question involved. If the trial court then decided the motion for judgment n.o.v. in favor of the movant, and on appeal this was found to have been in error, the jury verdict would be reinstated and the parties saved the expense of the second trial which would have ensued had the case erroneously been taken from the jury.
In adopting R.R. 4:51-2 the rule makers expressly required, as a condition precedent to its operation, a motion made at the close of the entire case and a reservation of decision thereon. Ordinarily, absent a motion for dismissal at the close of a case, a party is presumed to have waived his right to a judicial determination of the legal sufficiency of his adversary's claim. A legal point is not saved for review if the trial court is not, on proper motion, informed of the course the movant desires the court to take. We can see no reason why the rule should be otherwise in the present situation, particularly in view of the emphasis which the rule itself places upon the making of a motion at the close of all the evidence. This is in accord with the general rule that the propriety of the action of the trial court in granting or denying a motion for directed verdict will not be considered on review when no exception to such action was taken at the trial, *402 and a judgment n.o.v. will not be granted on appeal where there is no motion for a directed verdict in the trial court. 5 Am. Jur.2d, Appeal and Error, § 632, pp. 88-89. See also Annotation, 69 A.L.R.2d 478 et seq. (1960). We are, therefore, of the view that the defendant was without standing to move for judgment n.o.v. in this case.
In any event, we find defendant's claim that plaintiff was guilty of contributory negligence as a matter of law to be without substance. Contributory negligence is an affirmative defense and must be proved by a preponderance of the evidence. Ordinarily the issue is one for jury determination. Only in the clearest case of contributory fault, where a contrary hypothesis is not fairly admissible, does the question become one of law for decisive action by the court. Battaglia v. Norton, 16 N.J. 171, 179 (1954). Such is not the case here.
It is well settled that where two or more causes of action for damages are combined in a single suit, but are separately pleaded and proved, separate verdicts by a jury are required. The basic reason for this is that under the pleadings it is impossible to enter an intelligible judgment upon a verdict such as was here entered since there is no basis upon which the sum assessed can be appropriated to one or the other of the claimants. Lipari v. National Grocery Co., 120 N.J.L. 97, 99 (Sup. Ct. 1938); Spencer v. Haines, 73 N.J.L. 325, 326 (Sup. Ct. 1906); Warner v. Public Service Co-ordinated Trans., 9 N.J. Misc. 328, 329, 153 A. 711 (Sup. Ct. 1930).
Plaintiffs do not contend that the law is other than we state it to be, but urge that this court has the power to "mould" the verdict by dividing it as rendered into two verdicts, which will reflect, respectively, compensation to the husband for his actual expenses, and an award to the wife on her personal injury claim. There is no doubt that it is the court's duty to mould a verdict where the jury's finding is clear and unmistakable and where the defect is one of form and not in substance. Compare Rillo v. Eastern Carrier Corp., 132 N.J.L. 414, 415, 416 (E. & A. 1945). Here the findings *403 of the jury on the respective claims were not clear and unmistakable. While the proofs relating to the husband's unliquidated claim for out-of-pocket expenses may not have been controverted, it was the exclusive function of the jury to determine whether such expenditures were necessary and the moneys paid reasonable in amount, plaintiff having the burden of persuasion in this respect. Moreover, although the trial court did not charge on the subject (we think erroneously), plaintiff husband also claimed damages for loss of consortium.
We are satisfied that an apportionment of the single verdict would not fall within the authority to remedy a formal defect, but would constitute an invasion of the jury's province to evaluate unliquidated claims. This may not be done. The verdict, therefore, must be set aside.
This brings us to the final question which concerns the scope of the new trial. While, as we have said, the plaintiffs' proofs were sufficient to withstand the motion for involuntary dismissal they were, to say the least, fragile and of questionable weight. Mrs. Poland testified that on October 22, 1961 at about 6:30 P.M. she and her husband were in a tavern known as Remsen's Cafe. After having several drinks they left the cafe between 10 and 11 P.M. and went home. There, they had a disagreement and Mrs. Poland returned to the cafe. When she arrived, or when she subsequently left, is not clear. Although it is not definitely stated, the cafe appears to have been located on, or near, Route 130 which, as we have said, is a four-lane highway. Mrs. Poland testified:
"The only thing I can remember is crossing the highway and I was not on the highway but off the highway; that I was waving for a car or a vehicle to stop."
She said also that she was standing on the shoulder of the road and facing traffic. She said that she remembered one truck passing her, that she turned to see if the truck had stopped because of her signal, and that she was then struck by the unidentified vehicle.
*404 This testimony, sketchy as it was, was contradicted by defendant's witness Carl B. Rachels in the important matter of Mrs. Poland's claim that she was standing on the shoulder of the road when she was struck. Rachels testified that he was proceeding north on Route 130 when he observed a pedestrian who later proved to be Mrs. Poland. He said:
"When I first saw her she was standing on the side of the road, on the shoulder, close to the pavement. She stepped up to the pavement. I turned over to the left and went around her and she stepped back or jumped back it looked like. I pulled on down in front of the diner, stepped out on my fender, looked back up the road and there were three trucks acoming and she stepped up on the pavement, walked up and laid her head about that close to the center line.

* * * * * * * *
These three trucks  these two were running side by side, cut over like this, and missed her  the two front; the back one he cut over but he couldn't cut over enough and it looked like he run over her legs."
State Trooper John Land who arrived at the scene at about 2:30 A.M., shortly after the occurrence, said that he found the lady lying on the northbound lane of Route 130 with her head toward the center of the road and her feet "extending to the east shoulder in the right-hand lane." The evidence given by Rachels and trooper Land, both apparently disinterested witnesses, considered in conjunction with Mrs. Poland's doctor's description of the location of her injuries, which we will shortly relate, presented a strong challenge to Mrs. Poland's version of the accident. And, in considering the weight of Mrs. Poland's evidence the inferences to be drawn from her own description of her activities during the six or seven hours prior to the accident culminating in her "thumbing" a ride on a four-lane superhighway at 2 A.M., may not be lightly disregarded.
The medical evidence in the case established without contradiction that Mrs. Poland suffered a compound fracture of both bones of the left leg, shock, cerebral concussion and abrasions of both lower extremities. In June 1962, approximately eight months after the accident, an X-ray showed *405 "fairly good healing," and a brace was fitted in July which she wore until December 1962. Since then, and to the date of trial, Mrs. Poland has used a crutch for partial support. At that time she had a permanent shortening of 1/4 inch in the left leg, stiffness and limitation of the knee, and the atrophy of the muscles of the leg were such that the doctor's prognosis was that these conditions would be "indefinitely prolonged." It is apparent that the extensive injuries suffered by the plaintiff, her prolonged disability, past, present and future, and the shortening of the limb would have made modest the jury award, even had the entire sum of $10,000 been awarded to her. Plaintiffs also offered uncontradicted proof that Mr. Poland's expenditures for hospital care, medical treatment and household help amounted to in excess of $2,600. Thus, leaving aside any award for loss of consortium which might have been made, it appears probable that the damages granted Mrs. Poland at most amounted to less than $7,500. We are not called upon to say whether such an award would have been inadequate. That question is not before us. But we may consider all of the elements of damage proved on the two claims in determining whether or not the verdict of $10,000 was tainted by compromise, and in this connection we may also take into consideration the weakness of plaintiffs' proofs on the issue of liability as they are described above.
Since, as we have indicated, the case must go back for a new trial because of the illegality of the verdict, and since we have an area of discretion in fixing the scope of a new trial, we conclude that justice will best be served by an order for a new trial on all issues. Accordingly, we reverse.