87 N.J. Super. 382 (1965)
209 A.2d 635
BENJAMIN HIRSCH, PLAINTIFF-APPELLANT,
v.
ELMER SCHWARTZ, INDIVIDUALLY, ARCHIE SCHWARTZ COMPANY, A NEW JERSEY CORPORATION, ISIDOR S. HIRSCHHORN, RONSON METALS CORPORATION, A NEW JERSEY CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 25, 1965.
Decided April 29, 1965.
*385 Before Judges GAULKIN, FOLEY and COLLESTER.
Mr. Louis Kraemer argued the cause for appellant.
Mr. Dean Sandford argued the cause for respondents Elmer Schwartz and Archie Schwartz Company (Messrs. Wilentz, Goldman & Spitzer, attorneys).
Mr. Irwin Weinberg argued the cause for respondents Isidor S. Hirschhorn and Ronson Metals Corporation (Messrs. Weinberg & Bohrod, attorneys).
The opinion of the court was delivered by COLLESTER, J.A.D.
Plaintiff Benjamin Hirsch appeals from a judgment of involuntary dismissal rendered in the Superior Court, Law Division, upon the conclusion of plaintiff's opening statement to the jury.
Plaintiff brought suit alleging that (1) defendants Elmer Schwartz and the Archie Schwartz Company, while acting as his agents, breached their confidential relationship with him by divulging information to defendants Isidor S. Hirschhorn and Ronson Metals Corporation, and (2) all four defendants maliciously interfered with a contractual relationship between plaintiff and the Central Railroad Company of New Jersey.
A brief resume of plaintiff's opening statement to the jury will suffice. Plaintiff, who was interested in purchasing a tract of land in Newark owned by the Central Railroad Company of New Jersey (railroad), contacted Elmer Schwartz and obtained from him and his corporation an evaluation of the property. He had a previous acquaintance and experience with Schwartz and the Archie Schwartz Company, a real estate brokerage corporation in Newark, which specializes in industrial properties. Thereafter, plaintiff entered into a *386 contract with the railroad to purchase the property for $21,000. The contract, dated February 24, 1961, was subject to the approval of the directors of the railroad and of the New Jersey Public Utilities Commission. The directors approved it.
In March or April 1961 a representative of the Archie Schwartz Company inquired of plaintiff if he would be interested in constructing a building on part of the property for lease to Ronson Metals Corporation (Ronson). At a conference with Elmer Schwartz plaintiff showed him his written contract with the railroad which revealed the proposed purchase price of the tract. They discussed the dimensions of the proposed building and, following a telephone conversation between Schwartz and Isidor S. Hirschhorn, vice-president and general manager of Ronson, talked about an additional proposed parking area for Ronson. Subsequently, Schwartz telephoned plaintiff suggesting a sale of the entire tract to Ronson. They discussed a sales price. Schwartz told plaintiff that if the sale was consummated, he would be entitled to a brokerage commission. Plaintiff told Schwartz, "I will leave it entirely up to you to take care of it," and the latter said he would do so.
In May 1961 the railroad, pursuant to regulations of the Public Utilities Commission designed to ascertain the highest price obtainable for the property, inserted a blind advertisement in the newspaper describing the tract and inviting sealed bids. Schwartz obtained a sealed bid envelope from the railroad and suggested to Ronson that it submit a bid for the property. Plaintiff first learned in June that Schwartz was not negotiating for the sale of the property from plaintiff to Ronson and that Schwartz was going to bid for the property on behalf of Ronson. He protested. Thereafter, the Archie Schwartz Company, with knowledge that plaintiff's contract called for a purchase price of $21,000, submitted a bid on behalf of Ronson to purchase the property for $24,750. The railroad petitioned the Public Utility Commission for permission to consummate its contract with plaintiff. This was *387 opposed by Hirschhorn for Ronson. The Commission ruled that in view of Ronson's higher bid it could not authorize a conveyance to plaintiff.
Plaintiff, contending that defendants wrongfully used the confidential information of his contract with the railroad to outbid him, claimed damages for a loss of profit of $3,750 and asked for punitive damages.

I.
The dismissal of a complaint on plaintiff's opening is permissible under our practice and constitutes a final adjudication on the merits unless the court orders otherwise. R.R. 4:42-2(b). However, motions for dismissal on plaintiff's opening are not favored and should not be granted unless the facts are undisputed and the law free from doubt. Passaic Valley Sewerage Com'rs v. Geo. M. Brewster, etc., Inc., 32 N.J. 595, 606 (1960); Poland v. Parsekian, 81 N.J. Super. 395, 399 (App. Div. 1963). The judicial attitude is that the case is rare where the interests of justice will not be served by withholding action on or by denying the motion and receiving the plaintiff's proof. Ibid. Also, our courts have become more cautious since the change in our practice in 1948, because such a dismissal may now be a final adjudication precluding the commencement of another action, which was permissible under the former nonsuit practice.
When such a motion is presented it admits the truth of all the facts outlined and gives to the plaintiff the benefit of every possible favorable inference which can logically and legitimately be deduced. With this in mind, we have carefully reviewed plaintiff's opening statement.
Plaintiff alleged that a confidential relationship arose between him and defendants Elmer Schwartz and the Archie Schwartz Company. Defendants argue that plaintiff's opening did not set forth a principal-agent relationship. However, the record indicates that plaintiff's counsel stated,
*388 "And, of course, Mr. Schwartz, as he pointed out in both conferences, was acting as a broker, said if this were consummated he would be entitled to  when I say he, the Archie Schwartz Company would be entitled to their brokerage commissions and the like. So Benjamin Hirsch said, `I will leave it entirely up to you to take care of it,' and Elmer Schwartz said he would take care of the matter and be in touch with him." (Emphasis added)
As we read the record below, we take this statement indicating a brokerage relationship to include not only the conference about the sale of the property to Ronson but the previous conference relating to a proposed building construction and lease as well. It is noted that at the first conference, concerning the lease, plaintiff exhibited to Schwartz his written contract showing a proposed purchase price of $21,000 which had been entered into with the railroad.
Moreover, in considering a motion to dismiss directed toward plaintiff's opening statement, we think that the trial court should consider the allegations made and the issues raised in the pretrial order. The cases cited by defendants in opposition to this view arose before the 1948 practice became effective. The plaintiff's opening statement is made to the jury, and its purpose is to do no more than inform the jury in a general way of the nature of the action and the basic hypothesis projected, so that they may be better prepared to understand the evidence. As set forth in Passaic Valley Sewerage Com'rs case, supra,
"Counsel must be summary and succinct. Proposed evidence should not be detailed and it will be little more than an outline, quite frequently a fairly indefinite one by reason of the nature of the case." (32 N.J., at p. 605)
On the other hand, the motion to dismiss is made to the trial court who may determine what the case is all about from the pretrial order. We see no reason why, in the light of the liberal attitude taken with respect to openings, a trial court should close its eyes to facts alleged and issues raised in the pretrial order merely because such assertions were not set forth in an opening statement delivered for the benefit of the *389 jury. This court, on at least one occasion, has looked beyond what was stated in the opening in a review of the propriety of such a dismissal. See Terhune v. Margaret Hague Maternity Hospital, 63 N.J. Super. 106, 113 (App. Div. 1960). Whenever necessary, the court should inquire whether the plaintiff intends to prove the allegedly missing facts. If he does, plaintiff should be given the opportunity to expand his opening.
We note, then, that in the pretrial order plaintiff alleged that defendant Elmer Schwartz, at the conference when plaintiff exhibited his contract and revealed the purchase price, said he would act as plaintiff's broker in connection with the proposed construction of the building and lease to Ronson. It was further alleged that Schwartz and his corporation had previously served plaintiff as his broker in the sale of real estate. All in all, we are satisfied that a sufficient allegation of the relationship of principal and agent was made.
Defendants argue that at the time these alleged statements were made by Schwartz, plaintiff knew that Schwartz was representing Ronson and thus could not have been an agent for plaintiff. Where a principal-agent relationship exists, as alleged in the opening, it follows that the agent as a fiduciary was required to exercise good faith in his relationship with his principal, 1 Restatement, Agency 2d, § 13, p. 58, and this was in no way affected by the fact that the agent was also acting for another principal, 2 Restatement, Agency 2d, § 392, comment (a), p. 215. Part of such duty was nondisclosure of confidential information. As stated in the Restatement:
"The agent, however, is under no duty to disclose and has a duty not to disclose to one principal, confidential information given to him by the other, such as the price he is willing to pay." Id., § 392, comment (b), p. 215. See also § 395, p. 221.
Defendants further argue that plaintiff has no cause of action for breach of a fiduciary duty because of the legislative enactments governing the sale of railroad property which require *390 approval of the Public Utility Commission. They allege that there can be no confidential relationship under the circumstances here existing because it would be contrary to public policy. They rely upon In re West Jersey and Seashore R.R. Co., 46 N.J. Super. 543 (App. Div. 1957), in which this court affirmed the decision of the Board of Public Utility Commissioners disapproving the sale of realty by a railroad company to a proposed purchaser when a third person had offered more for the property. The significance of that case lies in the fact that the Board of Public Utility Commissioners, as empowered by the Legislature, could in the public interest interject itself into an otherwise private agreement to insure that the highest offer was the one accepted. However, we find nothing in the decision affecting the case at bar. To so hold would permit a fiduciary chosen by a principal to breach his trust at will and to bid in the property for himself or for another party in order to secure a greater commission for his services.
Defendants Hirschhorn and Ronson assert that there is no basis to hold them liable on plaintiff's claim. However, we note that plaintiff in his opening charged that they were parties to the alleged breach of trust by Schwartz. One who causes or assists an agent to violate his duty to a principal may be subject to liability to the principal for such action. 2 Restatement, Agency 2d, § 312, p. 50; 12 Am. Jur.2d, p. 838.
We conclude that the judgment of dismissal entered following plaintiff's opening statement should not have been granted. In view of such determination we find it unnecessary to pass upon the other points raised in the briefs submitted to us. The questions there raised may be properly considered and disposed of during the course of the trial. Nor do we pass upon the proof needed to sustain the alleged cause of action or upon the measure of damages. The judgment will be reversed and the cause remanded for trial.