TOWNSHIP OF WAYNE, a Municipal Corporation of the State of New Jersey, Plaintiff,

v.

Louis MESSERCOLA, Thomas Acquaviva, Paul Cavaliere, Jr., Raymond McGrogan, Fair Lawn–McBride Associates, McBride Enterprises, Inc., Keljed/McBride, Rene Spiropoulos and John Doe, Defendants.

Civ. A. No. 91–692 (AJL).

United States District Court, D. New Jersey.

March 23, 1992.

Steven Gerber, Gerber & Solomon, Wayne, N.J., for plaintiff.

John J. Barry, Clapp & Eisenberg, Newark, N.J., for defendant Paul Cavaliere, Jr.

J. Fortier Imbert, Asst. U.S. Atty., U.S. Atty's Office, Newark, N.J. for intervenor.

## OPINION

LECHNER, District Judge.

This is an action brought by the Township of Wayne ("Wayne") against defendants Louis Messercola ("Messercola"), Thomas Acquaviva ("Acquaviva"), Paul Cavaliere, Jr. ("Cavaliere"), Raymond McGrogan ("McGrogan"), Fair Lawn–McBride Associates ("Fair Lawn–McBride"), McBride Enterprises, Inc. ("McBride Enterprises"), Keljed/McBride, ("McBride") (Fair Lawn–McBride, McBride Enterprises and McBride are collectively referred to as the "McBride Defendants"), Rene Spiropoulos ("Spiropoulos") and John Doe, a fictitious defendant ("Doe").[1] *See* Complaint, filed 20 February 1991. On 25 June 1991 the First Amended Complaint was filed against Messercola, Acquaviva, Cavaliere, Spiropoulos, Point View Hills Corp. ("Point View"), Harry Stanford ("Stanford"), Jack Finkelstein ("Finkelstein") and Sam Siflinger ("Siflinger") (collectively, the "Defendants").[2] The First Amended Complaint alleges claims for violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* and the New Jersey RICO Act, N.J.S.A. 2C:41–1 *et seq.*, for conspiracy to violate federal and state RICO acts and for common law conspiracy and breach of fiduciary duty of honesty, loyalty and trust. First Amended Complaint, 6–25 (the "Amended Complaint"). Jurisdiction is alleged pursuant to 28 U.S.C. § 1331, 18 U.S.C. § 1964 and 28 U.S.C. § 1367, supplemental (pendant) jurisdiction.

Currently before the court is the motion of Wayne for partial summary judgment pursuant to Fed.Rule Civ.P. 56(b) against Cavaliere on Count Seven and Count Eight of the Amended Complaint.[3] For the reasons set forth below, the motion for partial summary judgment is granted; damages are awarded against Cavaliere in the amount of $184,370.

### Facts and Procedural History

The facts of this case surrounding bribe payments by Fair Lawn–McBride to Messercola relating to a real estate development project for Calvin Klein Cosmetics Corporation (the "Calvin Klein Project") are not disputed. From 1 January 1986 through 8 September 1988, Messercola was mayor of Wayne. Gerber Aff., Ex. B,

---

1. The Complaint has been dismissed, with prejudice, against McBride, Fair Lawn–McBride, McBride Enter., Doe and McGrogan. Consent Order, filed 13 May 1991; Consent Order, filed 12 June 1991.

2. The Amended Complaint has been dismissed, with prejudice, against Acquaviva, Spiropoulos, Siflinger, Finkelstein and Point View. Consent Orders, filed 26 July 1991. The remaining defendants in this action are Messercola, Cavaliere and Stanford.

3. In support of the motion for partial summary judgment, the following has been submitted: Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment Against Defendant Cavaliere on Counts VII and VIII of the First Amended Complaint (the "Moving Brief"); Affidavit of Philip T. Velie, Jr. (the "Velie Aff."); Affidavit of Steven Gerber (the "Gerber Aff."); Reply Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment Against Defendant Cavaliere on Counts VII and VIII of the First Amended Complaint (the "Reply Brief"); Reply Affidavit of Steven Gerber (the "Supp. Gerber Aff."); and Affidavit of John R. O'Brien (the "O'Brien Aff.").

In opposition to the motion for partial summary judgment, the following has been submitted: Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment Against Defendant Cavaliere on Counts VII and VIII of the First Amended Complaint (the "Opp. Brief").

Transcript of plea hearing of Messercola, dated 20 June 1990 (the "Messercola Plea Tr.") at 17. During that same time, Messercola was also employed as a sales manager by a private company whose offices were located in New York. *Id.* at 18.

During the period beginning 1985 through 1987 McBride Enterprises and its affiliate, Fair Lawn–McBride, were the developers of an office and distribution center on or off Barbour Pond Road in Wayne. Velie Aff., ¶ 2. During the summer of 1986 Messercola discussed with an associate of Fair Lawn–McBride whether Fair Lawn–McBride would be interested in developing the Calvin Klein Project in Wayne. Messercola Plea Tr. at 17. The proposed project was the development of an office, manufacturing and warehouse facility for Calvin Klein Cosmetics Corporation. *Id.;* Velie Aff., ¶ 2. Fair Lawn–McBride indicated it was interested in developing the Calvin Klein Project. Messercola Plea Tr. at 18.

Messercola agreed to assure the Calvin Klein Project would be approved by Wayne for the payment of a bribe. *Id.* at 18–19. Fair Lawn–McBride and Messercola also agreed that the bribe would not be a direct cash payment from Fair Lawn–McBride to Messercola. *Id.* at 18. They agreed to disguise the bribe by having Fair Lawn–McBride enter a brokerage agreement with a third person and have the bribe pass to the third person in the form of a commission (the "Commission Agreement"). *Id.* at 19. In December 1986 Wayne approved the Calvin Klein Project with the assistance of Messercola. *Id.*

In 1986 Cavaliere learned of the agreement between Fair Lawn–McBride and Messercola regarding the bribe and the Commission Agreement.[4] Gerber Aff., Ex. A, Transcript of Cavaliere Plea Hearing, dated 28 January 1991 (the "Cavaliere Plea Tr.") at 20. Cavaliere agreed to serve as the conduit who would pass the bribe to Messercola. *Id.* Subsequently, Cavaliere redrafted and signed the Commission Agreement. Velie Aff., Exs. A, B. Cavaliere also telephoned Messercola in his New York office from Cavaliere's New Jersey office to make arrangements regarding the Commission Agreement. Cavaliere Plea Tr. at 21.

The Commission Agreement holds Cavaliere out as the real estate broker who introduced Calvin Klein Cosmetics Corporation to Fair Lawn–McBride. *Id.* at 21; Velie Aff., Ex. B at 1. The Commission Agreement provided for payment of $273,000 in commission to Cavaliere, payable in two equal installments on 15 January 1987 and 15 September 1987. Velie Aff., Ex. B at 1. On 28 January 1987 and 13 October 1987 Cavaliere received payments of $136,500 each from Fair Lawn–McBride. *Id.,* Exs. D, F. Of the $273,000, Cavaliere kept $96,000 for himself and delivered the remaining $177,000 to Messercola. Cavaliere Plea Tr. at 21; Messercola Plea Tr. at 20.

Count One of the Amended Complaint alleges a claim for RICO violations against Messercola, Acquaviva, Cavaliere, Spiropoulos, Point View, Siflinger, Stanford and Finkelstein. Amended Complaint at 6–13. Count Two of the Amended Complaint alleges a claim for conspiracy to violate RICO against Messercola, Acquaviva, Cavaliere, Spiropoulos, Point View, Siflinger, Stanford and Finkelstein. *Id.* at 13–14. Count Three of the Amended Complaint alleges a claim for breach of the common law fiduciary duty against Messercola and for aiding and abetting of the breach of fiduciary duty against Spiropoulos and Point View. *Id.* at 14–15.

Count Four of the Amended Complaint alleges a common law claim for conspiracy to breach fiduciary duties against Messercola, Spiropoulos and Point View. *Id.* at 15–16. Counts Five and Six of the Amended Complaint allege common law claims for breach of fiduciary duty, aiding and abetting of the breach of fiduciary duty and conspiracy against Messercola and Acquaviva. *Id.* at 16–19.

---

**4.** During the relevant time period, Cavaliere was a practicing attorney with offices in Wayne,

New Jersey. Amended Complaint, ¶ 5.

Counts Seven and Eight, the relevant counts in this motion, are against Messercola and Cavaliere. Count Seven of the Amended Complaint alleges a common law claim for breach of fiduciary duty and aiding and abetting for accepting bribes with respect to the Calvin Klein Project. *Id.* at 19–20. Count Eight of the Amended Complaint alleges a common law claim for conspiracy to breach a fiduciary duty. *Id.* at 20–21.

Counts Nine and Ten allege common law claims for breach of fiduciary duty and conspiracy to breach a fiduciary duty against Messercola, Acquaviva, Stanford, Finkelstein and Siflinger. *Id.* at 21–23. Counts Eleven and Twelve allege claims for N.J.S.A. 2C:41–2 and 2C:5–1 against Messercola, Acquaviva, Spiropoulos, Cavaliere, Point View, Stanford, Finkelstein and Siflinger. *Id.* at 23–25. As previously stated, the claims against Acquaviva, Spiropoulos, Point View, Siflinger and Finkelstein have been dismissed. *See supra* p. 1306 n. 2.

On 17 April 1991 Wayne approved a bond ordinance for the issuance of $8,000,000 in bonds for the acquisition of High Mountain Park in Wayne. Opp. Brief, Ex. C. This property was owned by Fair Lawn–McBride or its affiliates. *Id.* at 3.

Also on 17 April 1991 Wayne approved the settlement of the federal and state claims against the McBride Defendants. Opp. Brief, Ex. B. On 6 May 1991 Wayne entered a settlement agreement with the McBride Defendants (the "McBride Settlement Agreement"). O'Brien Aff., Ex. B. Under the McBride Settlement Agreement, the McBride Defendants paid Wayne $150,000 for the release of all claims asserted against them in this action and an action brought in state court.[5] *Id.*, § 3.1. The $150,000 settlement payment was allocated as follows: "one-third (⅓) of such amount represents reimbursement to WAYNE for professional fees and related litigation expenses in its actions and two-thirds (⅔) of such amount is payment for alleged common law compensatory damages." *Id.*, § 3.3.

The McBride Settlement Agreement provided, in pertinent part:

The claims released by Wayne are limited only to those stated in its Complaint filed in the state action and federal action and any other claim for damages or relief that could arise from the common operative set of facts set forth in those actions.

. . .

... Wayne hereby RELEASES the Released Parties from the claim or obligation as defined in paragraph 4.2.E. of this Agreement. This Release is absolute and unqualified with respect to the claim or obligation ... but it does not affect or constitute a release of any other claims or obligations not mentioned....

4.5. The Releasor specifically reserves any and all rights which Releasor may have against each and every Third Party ... and nothing herein shall be construed to fully or partially release any Third Party.

*Id.* §§ 4.2–4.5. The McBride Settlement Agreement defines Third Party as "any other person(s), firm(s), corporation(s), partnership(s) and/or other entities who are not named or otherwise described in "D" below but who are or may be claimed to be responsible for the same damage or injury to [Wayne] for which this Release is given."[6] *Id.* at 5.

---

**5.** On 8 March 1991 Wayne sued the McBride Defendants in the Superior Court of New Jersey (the "State Action") for aiding and abetting and conspiracy to breach the fiduciary duty of trust and loyalty. *See* Supp. Gerber Aff., Ex. A, *Township of Wayne v. Tumminello, et. al.,* No. PAS–L–2983–91.

Wayne claimed $25,000 in unlawful payments in the State Action, $10,000 in unlawful payments in the federal action with respect to what the parties have identified as the "Urban Renewal Project" and $273,000 in unlawful payments with respect to the Calvin Klein Project. Reply Brief at 3–4.

**6.** The released parties include McBride Enterprises, Fair Lawn–McBride and their affiliates, successors and predecessors including Urban Farms, Inc., Urban Farms Shopping Center, Inc., Wayne–McBride Associates I and II, Fair Lawn–McBride Associates I and their officers, directors, partners, shareholders and employees. O'Brien Aff., Ex. B at 6.

*Discussion*

Wayne moves for partial summary judgment on Counts Seven and Eight against Cavaliere on the ground that Cavaliere aided and abetted Messercola's breach of fiduciary duty. Moving Brief at 9–16. Wayne argues that as an aider and abettor Cavaliere is liable to it for damages. *Id.* at 18–19; Reply Brief at 9–13.

Cavaliere concedes his liability as an aider and abettor to Messercola,[7] but argues a genuine issue of material fact exists with respect to the amount of damages. Opp. Brief at 1–4. Specifically, Cavaliere argues there is a genuine issue of material fact on the issues of whether the McBride Settlement Agreement released Cavaliere, of the precise amount of recovery under Counts Seven and Eight and whether Wayne has been fully compensated for any damages sustained. *Id.* at 2.

A. Summary Judgment Standard of Review

 To prevail on a motion for summary judgment, the moving party must establish "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The present task is to determine whether disputed issues of fact exist, but a district court may not resolve factual disputes in a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *see Nathanson v. Medical College of Penn.,* 926 F.2d 1368, 1380 (3d Cir.1991) (Summary judgment may not be granted "if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed."); *Hackman v. Valley Fair,* 932 F.2d 239, 241 (3d Cir.1991) ("[S]ummary judgment is inappropriate when a conflict on a material fact is present in the record."). All evidence submitted must be viewed in a light most favorable to the party opposing the motion.

*Boyle v. Governor's Veterans Outreach & Assistance Center,* 925 F.2d 71, 75 (3d Cir. 1991); *Weldon v. Kraft, Inc.,* 896 F.2d 793, 797 (3d Cir.1990); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Todaro v. Bowman,* 872 F.2d 43, 46 (3d Cir.1989); *Joseph v. Hess Oil,* 867 F.2d 179, 182 (3d Cir.1989). " 'Any 'unexplained gaps' in material submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment.' " *Ingersoll–Rand Fin. Corp. v. Anderson,* 921 F.2d 497, 502 (3d Cir.1990) (quoting *O'Donnell v. United States,* 891 F.2d 1079, 1082 (3d Cir.1989)).

Although the summary judgment hurdle is a difficult one to overcome, it is by no means insurmountable. As the Supreme Court has stated, once the party seeking summary judgment has pointed out to the court the absence of a genuine issue of material fact,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.'* ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'

*Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (emphasis in original, citations and footnotes omitted). In other words, the inquiry involves determining " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Brown v. Grabowski,* 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting *Anderson v. Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12), *cert. denied,* —— U.S. ——, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991).

---

**7.** As mayor, Messercola was a public official with a fiduciary duty of trust, honesty and loyalty to Wayne. *See Driscoll v. Burlington–Bristol Bridge, Co.,* 8 N.J. 433, 474, 86 A.2d 201, *cert. denied,* 344 U.S. 838, 73 S.Ct. 33, 97 L.Ed. 652,

*reh'g denied,* 344 U.S. 888, 73 S.Ct. 181, 97 L.Ed. 687 (1952); *Hyland v. Simmons,* 152 N.J.Super. 569, 579, 378 A.2d 260 (Chanc.Div.1977), *aff'd,* 163 N.J.Super. 137, 394 A.2d 376 (App.Div.1978), *cert. denied,* 79 N.J. 479, 401 A.2d 234 (1979).

The Supreme Court elaborated on the summary judgment standard in *Anderson v. Liberty Lobby:* "If the evidence [submitted by a party opposing summary judgment] is merely colorable ... or is not significantly probative ... summary judgment may be granted." 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted). The Supreme Court went on to note in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986): "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Id.* at 323–24, 106 S.Ct. at 2552–53 (footnote omitted).

■ Once a case has been made in support of summary judgment, the party opposing the motion has the affirmative burden of coming forward with *specific* facts evidencing a need for trial. *see* Fed. R.Civ.P. 56(e); *see also Maguire v. Hughes Aircraft Corp.,* 912 F.2d 67, 72 (3d Cir. 1990) (non-moving party may not rest upon mere allegations); *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990) (neither unsupported allegations in pleadings and memoranda of law nor conclusory allegations in affidavits will establish genuine issue of material fact); *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1165 (3d Cir.1990) (cannot create issue of fact merely by questioning credibility of movant's witnesses; circumstantial evidence may raise issue of fact); *Aronow Roofing Co. v. Gilbane Building Co.,* 902 F.2d 1127, 1128 (3d Cir.1990) ("summary judgment will be granted where the nonmoving party fails to 'establish the existence' of an element essential to the case"); *Carlson v. Arnot-Ogden Memorial Hosp.,* 918 F.2d 411, 413 (3d Cir.1990) ("nonmoving party must adduce more than a mere scintilla of evidence in its favor").

**B. Appropriate Damages**

■ Cavaliere argues that, in the absence of more specific proof, the measure of damages is $177,000 which represents the amount of the bribe paid by Fair Lawn–McBride to Messercola. Opp. Brief at 2. In addition, Cavaliere argues the $177,000 must be offset by any recovery from either Messercola or the McBride Defendants. *Id.* Cavaliere argues a genuine issue of material fact exists on the issue of whether the McBride Settlement Agreement was intended to release Cavaliere as a joint tortfeasor.[8] *Id.* at 3. Lastly, Cavaliere argues a genuine issue of material fact exists regarding whether additional settlement agreements were entered and whether the claim has been compensated in full.[9] *Id.*

---

8. Cavaliere's argument is without merit. The McBride Settlement Agreement specifically provides that it is not intended to release third parties. O'Brien Aff., Ex. B. § 4.5. Third parties include those persons who may be liable on the same claims as Fair Lawn–McBride and McBride Enterprises who are not named as persons released in the McBride Settlement Agreement. *Id.* § 4.2.B. Cavaliere is not named in the McBride Settlement Agreement; accordingly, he is a third party and is not released.

9. Specifically, Cavaliere refers to the bond ordinance under which Wayne approved the issuance of bonds for the possible acquisition of park land owned by Fair Lawn–McBride or its associates. Opp. Brief at 3. The bond ordinance neither refers to Fair Lawn–McBride nor a settlement. Moreover, the proposed acquisition is made pursuant to New Jersey's Green Acres Program. O'Brien Aff., ¶ 6. Cavaliere has not submitted a Rule 56(f) affidavit in support of his contentions; indeed, he has made only conclusory allegations and speculations regarding the intent behind the bond ordinance.

*See Dowling v. City of Philadelphia,* 855 F.2d 136, 139–40 (3d Cir.1988) (Rule 56 imposes requirement "that party seeking further discovery in response to a summary judgment motion submit an affidavit specifying for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained."); *see also, J.F. Feeser, Inc. v. Serv-a-Portion, Inc.,* 909 F.2d 1524, 1545 n. 2 (3d Cir.1990) (Stapleton, J., concurring and dissenting), *cert. denied,* —— U.S. ——, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991); *Hancock Indus. v. Ford Motor Company,* 795 F.2d 15, 18 (3d Cir.1986). The Third Circuit has stated, " 'filing an affidavit is necessary for the preservation of a Rule 56(f) contention that summary judgment should be delayed pending further discovery.' " *Dowling,* 855 F.2d at 140 (quoting *Mid-South Grizzlies v. National Football League,* 720 F.2d 772, 780 n. 4 (3d Cir.1983)). Such allegations are insufficient to defeat a motion for partial summary judgment. *See Maguire,* 912 F.2d at 72; *Schoch,* 912 F.2d at 657.

■ Although the New Jersey Supreme Court has not ruled on the issue of whether an aider and abettor to a breach of fiduciary duty is liable, other courts have held "that a third party's inducement of or knowing participation in a breach of duty by an agent is a wrong against the principal which may subject the third party to liability."[10] *Continental Management, Inc. v. United States,* 527 F.2d 613, 616–17, 208 Ct.Cl. 501 (1975); *see also Hirsch v. Schwartz,* 87 N.J.Super. 382, 390, 209 A.2d 635 (App.Div.1965) ("One who causes or assists an agent to violate his duty to a principal may be subject to liability to the principal for such action."); *Jaclyn, Inc. v. Edison Brothers Stores, Inc.,* 170 N.J.Super. 334, 367, 406 A.2d 474 (Law Div.1979) ("[A] third party who knowingly aids and abets the agent of another in breach of fiduciary duty by tendering secret payments to the agent, is liable to the principal...."); Restatement (Second) of Agency § 312 (1958).

*Continental Management* dealt with a counterclaim of the United States to recover bribes the plaintiff paid to Federal Housing Authority employees. The court found the plaintiff liable to the defendant employer for inducing the employees' breach of fiduciary duty. The *Continental Management* court explained the reason for imposing aider and abettor liability as follows:

> [A]ll who knowingly participate in a scheme by which an agent obtains secret profits should be held liable to the principal. The opinions evidence the strong policy against the payment of money or other benefits to another's agent, a commitment to giving full relief to the principal, a willingness to draw all reasonable inferences from the available evidence, and a flexibility in devising remedies to run against all available participants.

527 F.2d at 617 (citations and footnote omitted).

The court stated once liability is determined, damages need not be proved through specific and direct injury, but rather, "it is enough to show the fact and amount of the bribes." *Id.* at 618. In accepting the amount of bribes paid as the amount of damages, the court observed:

> Assuming (as we do) that the predicate for a non-statutory civil remedy is the probability that damage will flow from the giving of the bribe, we think it clear from common experience that such probability ordinarily accompanies the subversion of public officials. In the normal course the briber deprives the Government of the loyalty of its employees, upon which the Government and the public must rely for the impartial and rigorous enforcement of government programs. Bribery of officials can also cause a diminution in the public's confidence in the Government, upon which the Government must also rely.

*Id.* at 618.

The *Continental Management* court held the amount of the bribe is a reasonable measure of damage because it is "the *value* the [briber] *placed on the corruption* of the [bribee's] employee's; on the other side ... is that the [briber] hoped and expected to benefit by more than the sum of the bribes." *Id.* at 619 (emphasis added). The court concluded, so long as double recovery is not awarded for the bribes, the aider and abettor who is a joint tortfeasor with the agent is "jointly liable to the principal for the agent's secret profits." *Id.; see also Jaclyn,* 170 N.J.Super. at 368, 406 A.2d 474; *Hirsch,* 87 N.J.Super at 390, 209 A.2d 635.

■ Cavaliere argues the amount of damages must be limited to the $177,000 paid to Messercola and does not include the $96,000 he kept for himself. Opp. Brief at

10. When a federal court is faced with an issue of state law that has not been decided, it must "predict how the New Jersey Supreme Court would rule if presented with this case." *Repola v. Morbark Indus., Inc.,* 934 F.2d 483, 489 (3d Cir.1991); *see also, McWilliams v. Yamaha Motor Corporation,* 780 F.Supp. 251, 256 (D.N.J. 1991); *National–Standard Co. v. Clifton Ave. Corp.,* 775 F.Supp. 151 (D.N.J.1991). "In predicting how the highest state court would decide an issue, the federal court may look to analogous state court cases, treatises, restatements and law review articles." *Id.; see also Aetna Casualty & Surety Co. v. Farrell,* 855 F.2d 146, 148 (3d Cir.1988).

2. Although Cavaliere correctly points out Messercola only received $177,000 in bribes, to exclude from damages the $96,000 received by Cavaliere would thwart public policy. Fair Lawn–McBride's purpose in paying the bribe and entering the Commission Agreement was to receive Wayne's approval on the Calvin Klein Project.

The bribe was $273,000. It represents the value of obtaining approval on the Calvin Klein Project. The $273,000 was shared by Messercola and Cavaliere. Indeed, the payment to Cavaliere was necessary to disguise the bribe to Messercola. Cavaliere knew he was participating in a bribery scheme and that the Commission Agreement was only a means to disguise the $273,000 bribe. Cavaliere Plea Tr. at 19. The $96,000 Cavaliere retained was payment for services rendered in participating in this scheme. The policy of giving full relief to the principal who was subject to a bribery scheme requires that Wayne recover the full value of the corruption. Accordingly, the full amount of damages to be awarded with respect to claims based on the Calvin Klein Project is $273,000.

Cavaliere correctly points out, and Wayne does not contest, the fact that Wayne can only recover once for the bribery scheme. *Continental Management,* 527 F.2d at 619. With respect to the Calvin Klein Project, Wayne sought damages from Messercola, Cavaliere and Fair Lawn–McBride. *See* Complaint and Amended Complaint. The McBride Settlement Agreement released Fair Lawn–McBride of any liability it may have with respect to the Calvin Klein Project as well as other claims in this action and the state action for which Wayne claimed a total of $308,000.[11] O'Brien Aff., Ex. B § 3.2.

■ Because Cavaliere and Fair Lawn–McBride are joint tortfeasors, the effect of the McBride Settlement Agreement on the amount of recovery must be considered. Under New Jersey law, "the

release of one joint tortfeasor does not release the other joint tortfeasor, unless ... the consideration constitutes full compensation or is accepted as such." *Barticheck v. Fidelity Union Bank/First Nat'l State,* 680 F.Supp. 144, 149 (D.N.J.1988) (citing *Daily v. Somberg,* 28 N.J. 372, 383, 146 A.2d 676 (1958)). The defendants bear the burden of proving that the release was intended to serve as full compensation. *Id.*

■ In this case, Cavaliere has made no efforts to show the McBride Settlement Agreement was intended to be full compensation for the claims based on the Calvin Klein Project. The facts indicate the contrary. Wayne received $150,000 under the McBride Settlement Agreement in settlement of three claims it had against Fair Lawn–McBride and its affiliates for which Wayne claimed damages totalling $308,000. As discussed, with respect to the Calvin Klein Project, Wayne suffered damages in the amount of $273,000. *See supra* p. 1312. Fair Lawn–McBride asserted defenses to three claims against it; accordingly, the $150,000 represented a compromise agreement with respect to all three claims. By the time the McBride Settlement Agreement was entered, Cavaliere and Messercola had already pleaded guilty to participating in the bribery scheme. Wayne had no need to settle its claims with Cavaliere.

Importantly, the McBride Settlement Agreement specifically states it is not intended to release third persons who may also be liable on the same claims. In light of the facts that the amount paid under the McBride Settlement Agreement represents a compromise, that Cavaliere had no defenses against Wayne and that Cavaliere was not released under the McBride Settlement Agreement, Cavaliere's conclusory allegations that a genuine issue of material fact exists regarding whether the parties intended the McBride Settlement Agreement to constitute full compensation strains credulity. Such empty conclusory

11. As previously mentioned, Wayne claimed $25,000 in unlawful payments in the State Action, $10,000 in unlawful payments in the federal action with respect to what the parties have

identified as the "Urban Renewal Project" and $273,000 in unlawful payments with respect to the Calvin Klein Project. Reply Brief at 3–4.

allegations cannot defeat a motion for partial summary judgment.[12]

Nevertheless, the amount of damages must be offset to the extent Wayne received partial recovery from the McBride Defendants on the bribery scheme relating to the Calvin Klein Project.

Cavaliere argues the McBride Defendants paid $150,000 in full and final satisfaction of the claims against them. Opp. Brief at 2–3. Wayne argues only $100,000 was paid in compensatory damages for settlement of the three claims it asserted against the McBride Defendants. Reply Brief at 12. Accordingly, Wayne argues the amount of recovery on each claim must be prorated against the $308,000 claimed in compensatory damages against the McBride Defendants. *Id.*

█ Under the terms of the McBride Settlement Agreement, of the $150,000 paid in settlement of the federal and state claims, "one-third (⅓) of such amount represents reimbursement to WAYNE for professional fees and related litigation expenses in its actions and two-thirds (⅔) of such amount is payment for alleged common law compensatory damages." McBride Settlement Agreement, § 3.3. Therefore, according to the intent of the parties the amount of damages paid with respect to the state and federal claims is $100,000, not $150,000.

As suggested by Wayne, the prorated share of the damages paid on the Calvin Klein Project claim is 88.63 percent of the $100,000.[13] The recovery on the Calvin Klein Project claims from the McBride Settlement Agreement is $88,630. Thus, the $273,000 in damages on the Calvin Klein Project claims must be offset by $88,630, which leaves a total of $184,370. Cavaliere as an aider and abettor is liable to Wayne in the amount of $184,370.

*Conclusion*

For the reasons set forth above, the motion for partial summary judgment is granted and damages are awarded against Cavaliere in the amount of $184,370.

---

12. Cavalier stated, in his opposition brief and at oral argument, that discovery has been stayed in this action; however, he does not provide a Rule 56(f) affidavit attesting to the issues on which he claims there is a genuine issue of material fact. *See supra* p. 1310 n. 9.

13. The 88.63 percent was derived by dividing the $273,000 (damages on the Calvin Klein Project) by $308,000 (the total amount of damages claimed against the McBride Defendants). Thus, the McBride Defendants paid 88.63 percent of the $273,000 in damages on the Calvin Klein Project.