**UNITED STATES of America,**

v.

**Louis J. CITARELLI, Defendant.**

**Nos. CRIM.A. 98–225, CRIM.A. 98–485.**

United States District Court,
D. New Jersey.

Feb. 25, 2002.

Christopher J. Christie, United States Attorney, James B. Nobile, Assistant United States Attorney, United States Department of Justice, United States Attorney, District of New Jersey, Newark, NJ, for United States of America.

Michael D'Alessio, Jr., West Orange, NJ, for Louis J. Citarelli.

Robert A. Weir, Jr., Robert A. Weir, P.C., Red Bank, NJ, for C.C.

Thomas J. Rattay, Porzio, Bromberg & Newman, P.C., Morristown, NJ, for City of Newark Board of Education.

## OPINION

ORLOFSKY, District Judge.

## I. INTRODUCTION

The sentencing of Defendant, Louis J. Citarelli ("Citarelli"), presents an unusual case in that Citarelli does not challenge the Probation Department's calculation of his Total Offense Level, Criminal History Category, or Sentencing Guideline Range. Rather, he strenuously objects to any award of restitution to the victims of his crimes. Citarelli's objections bring into sharp focus the important goals embodied in the Victim and Witness Protection Act, 18 U.S.C. §§ 3663–64 ("VWPA") and this Court's obligation to achieve them whenever possible. For the reasons that follow, I am unmoved by Citarelli's vehement contention that this Court should decline to calculate how restitution, if any, to his former spouse, a victim of his fraudulent scheme, should be calculated, because that calculation might require more extrapolation than would an award of restitution for a crime involving a theft of a sum certain. I conclude that I am compelled to order restitution here, despite any potential "complication or prolongation of the sentencing process" because of the circumstances of Citarelli's crimes, the harm suffered by the victims of his crimes, and the purpose of an award of restitution under the VWPA.

## II. BACKGROUND

On August 14, 1998, Citarelli pled guilty to Count One of a 32 Count Indictment, which charged a violation of 18 U.S.C. § 371, Conspiracy to Commit Bribery, and to a Three Count Information, which charged: (1) a violation of 18 U.S.C. § 666 (Bribery) in Count One; (2) a violation of 18 U.S.C. § 371 (Conspiracy to Commit Mail Fraud and Wire Fraud) in Count Two; and, (3) a violation of 18 U.S.C. § 371 (Conspiracy to Defraud the Internal Revenue Service) in Count Three. *See* Tr. of Plea Allocution before The Honorable Stephen M. Orlofsky, *United States v. Louis J. Citarelli and Donato Marucci,* Criminal Nos. 98–225–01, 98–225–02, of August 14, 1998.

Citarelli and his co-conspirator, Donato Marucci ("Marucci"), were medical doctors practicing medicine as Franklin Medical Association, P.A. ("FMA"), North Jersey Pain & Rehabilitation ("North Jersey Pain"), Nutley Diagnostics ("Nutley"), and Mag–Dan Diagnostics ("Mag–Dan"). *See* Pre–Sentence Report ("PSR") at ¶ 17. The relevant conduct underlying Citarelli's

crimes is grouped under two fraudulent schemes: (1) a bribery scheme involving the City of Newark Board of Education, and its payment of Workmen's Compensation benefits; and, (2) a scheme to defraud the Internal Revenue Service, ("IRS"), the New Jersey Superior Court, and Citarelli and Marucci's former spouses by underreporting income on their federal tax returns and on the Case Information Statements ("CIS") they filed with the Superior Court in their divorce proceedings.[1]

### A. The Workmen's Compensation Bribery Scheme

Citarelli and Marucci were approved Workmen's Compensation panel doctors for the City of Newark Board of Education ("Board of Education"), and, as such, were eligible to treat its employees who had been injured on the job and receive payment for those services directly from the Board of Education. *Id.* at ¶ 20. From August 5, 1993 through April 5, 1996, Citarelli and Marucci made 33 payments totaling $65,088.41 to Louis Monaco ("Monaco"), a Workmen's Compensation Coordinator, in exchange for Monaco's assistance in "steering" Workmen's Compensation business from the Board of Education to their medical practice and for assisting them in receiving payment. *Id.* at ¶¶ 21, 22.

### B. IRS Fraud and Divorce Fraud

In the summer of 1993, it became clear to Citarelli and Marucci that their marriages were ending. In contemplation of the impending divorce actions, they entered into an agreement with their accountant, Michael Cortese ("Cortese"), to hide

portions of their income and assets from their wives. *Id.* at ¶ 25.

Citarelli's wife, C.C., filed for divorce on October 5, 1993; Marucci's wife filed for divorce on September 27, 1993. *Id.* at ¶¶ 27, 28. Immediately thereafter, Citarelli and Marucci created the sham corporation, Mag–Dan, through which they funneled earnings from their medical practice, to conceal those assets from their wives and the Superior Court. With the assistance of Cortese, Citarelli and Marucci filed false CIS's with the Family Court which failed to disclose the existence of Mag–Dan or any of the income that had been diverted to Mag–Dan. *Id.* at ¶¶ 29–34. Cortese also assisted Citarelli and Marucci in filing false individual tax returns and a corporate tax return for Mag–Dan, all of which failed to portray accurately the ownership of Mag–Dan and the true net worth of Citarelli and Marucci. *Id.* at ¶¶35–40. In addition, Citarelli secreted $190,700 in cash and Marucci, $750,000 in cash, in their respective homes. *Id.* at ¶¶ 25, 65, 66.

A judgment of divorce was entered in the Citarelli divorce proceeding on November 14, 1995, pursuant to an agreement between the parties as to alimony and equitable distribution. It is important to note, however, that Citarelli's former spouse, C.C., consummated the agreement which resolved the divorce and the Family Court approved that agreement unaware of the assets that had been diverted to and concealed in Mag–Dan. *Id.* at ¶¶ 41–42. A judgment of divorce in the Marucci proceeding was entered on January 17, 1996, pursuant to an agreement between Maruc-

---

1. N.J. Court Rule 5:5–2(a) provides, in relevant part: "[A] case information statement ... shall be filed and served in all contested family actions, except summary actions, in which there is any issue as to custody, support, alimony or equitable distribution." Pur-

suant to Rule 5:5–2(b), the Case Information Statement must be filed in the form set forth in Appendix V of the Court Rules, which requires the party submitting the statement to certify, pursuant to Rule 1:4–4(b), as to the truth of the information contained therein.

ci and his former spouse as to alimony, equitable distribution, and child support. Again, neither Marucci's wife nor the Family Court was aware of the funds which had been diverted to and concealed in Mag–Dan when the agreement was negotiated by the parties and approved by the Court. *Id.* at ¶ 44. After the divorce judgments were entered, Cortese advised Citarelli and Marucci as to how and when to return the diverted funds from the sham Mag–Dan account to their personal accounts. *Id.* at ¶ 45. The total amount of money which Citarelli and Marucci diverted was calculated to be $1,925,039.56. *Id.* at ¶ 50. Citarelli avoided payment of $260,264 in personal income tax and conspired to evade corporate taxes of $206,296, for a total of $466,560 in evaded income tax. *Id.* at ¶ 63. Marucci is responsible for $485,674 in evaded income tax. *Id.* at ¶ 64.

## III. DISCUSSION

### A. The Sentencing Guidelines Calculation

The Probation Department has determined that the Total Offense Level for Citarelli's crimes is 21 and that his Criminal History Category is I. Citarelli has not objected to the Sentencing Guidelines calculation. Pursuant to the 1995 Sentencing Guidelines which have been used in this case, this results in a Sentencing Guideline Range of 37 to 46 months.

The Government has filed a motion pursuant to § 5K1.1 of the Sentencing Guidelines seeking a downward departure because of Citarelli's substantial assistance in the Government's investigation and prosecution of other persons who committed offenses. Citarelli has not moved for a downward departure, but has submitted a substantial number of letters from family, friends, and business associates attesting to his good character.

I shall not address the Government's motion for a downward departure at this time, but shall defer a ruling on that motion to the sentencing hearing. I now turn to the question of restitution under the VWPA.

### B. Restitution

Pursuant to the VWPA, which is incorporated into the Sentencing Guidelines by § 5E1.1, a sentencing court may order a criminal to make restitution to any victim of his offense. *See United States v. Maurello,* 76 F.3d 1304, 1316 (3d Cir.1996); 18 U.S.C. § 3663(a)(1). In determining the amount of restitution, if any, the court:

> shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

18 U.S.C. § 3664(a). The sentencing court must make specific factual findings as to the amount of loss sustained by the victims, the defendant's ability to pay, and the relationship between the amount of restitution ordered and the loss caused by defendant's offense. *See Maurello,* 76 F.3d at 1316 (citing *United States v. Graham,* 72 F.3d 352, 356–57 (3d Cir.1995); *United States v. Logar,* 975 F.2d 958, 961 (3d Cir.1992)).

An order of restitution may not include losses caused by conduct that falls outside the temporal limits established by a guilty plea. *See United States v. Akande,* 200 F.3d 136, 137 (3d Cir.1999). " 'Where a defendant alleges any factual inaccuracy in the presentence report, the Court must make: (1) a finding as to the allegation, or (2) a determination that no such finding is necessary because the matter controverted will not be taken into

account in sentencing.'" *Maurello,* 76 F.3d at 1317 (quoting *United States v. Cherry,* 10 F.3d 1003, 1013 (3d Cir.1993)).

 The Government must prove by a preponderance of the evidence that "there exists a realistic prospect that the defendant will be able to pay the required amount [of restitution]." *United States v. Copple,* 74 F.3d 479, 485 (3d Cir.1996). The defendant has the burden of proving his financial needs and resources, also by a preponderance of the evidence. *United States v. Graham,* 72 F.3d 352, 356 (3d Cir.1995).

### 1. Loss to the Newark Board of Education

 The Newark Board of Education has been identified as the victim of the Workmen's Compensation Bribery Scheme because it was denied the honest and legitimate services of Monaco, its Safety and Insurance Coordinator for Workmen's Compensation. The Board of Education has requested this Court to order Citarelli to make restitution in the amount of $90,000, half of the total amount of $180,000 they claim to be due. In support of this request, the Board cites to an Order of Judge Ferenz of the Superior Court of New Jersey, dated August 31, 2001, which held Citarelli and Marucci jointly and severally liable to the Newark Board of Education for $60,000, the amount they admitted to paying in bribes to the Workmen's Compensation Coordinator. Judge Ferenz then trebled the award pursuant to New Jersey's RICO statute, N.J.S.A. § 2C:41–4(c). *See* Order, *Franklin Medical Assoc. v. Newark Public Sch. et al.,* Docket No. ESX–L–6779–98, at 2 (N.J.Super. Ct. Law Div. Aug. 31, 2001).

The Probation Department agrees that the Board of Education is a victim of the scheme charged in Count One of the Information, but states:

[t]he monetary loss suffered by the Board of Education is difficult to discern, as Franklin Medical was paid for services rendered as a result of the bribe payments made to Monaco. Assuming that Citarelli and Marucci could have lowered their fees by at least the amount of the bribe payments, the amount of the bribes, or $60,000, will be used as the amount of restitution due to the Board of Education.

PSR ¶ 68. The Government has concurred in the Probation Department's assessment. *See* Gov't Letter Br. of Jan. 18, 2002, at 1 n. 1.

Citarelli asserts that no restitution is due to the Newark Board of Education because:

The Board of Education, in a lawsuit against Marucci and Citarelli ultimately accepted $25,000 from Citarelli, as his part of the settlement in behalf of something just less than one half of the $60,000 [paid] in bribes .... the Board of Education probably did not suffer any loss, at least in dollars as a result of this scheme since ... the bribe money came directly from the doctors and the amounts charged by the doctors to the Board were set by the Board and reviewed by a third party. The fees were never set by the doctors, and were always approved by the Board and the work was done, and there had never been any indication or accusation that the doctors did not, in fact, perform the services for which they were paid. The assumption by the Probation Office that Citarelli and Marucci 'could have lowered their fees by at least the amount of the bribe payment' is absolutely inaccurate. The fees were set by the Board and at least as far as Citarelli is concerned he has returned something a little less than half of the $60,000 in bribes, which was the measure of damages used

in the lawsuit and in the guidelines in this case.

Citarelli Letter Br. of Jan. 10, 2002, at 3.

I conclude that the Board of Education was a victim of Citarelli's offense, because, as a result of Citarelli's actions, the Board was deprived of the honest services of its Workmen's Compensation Coordinator. The difference between the value of these honest services and the services which the Board of Education actually received, however, is incalculable. The judgment in the amount of $180,000, entered by the Superior Court of New Jersey for Citarelli's violation of New Jersey's RICO statute bears no relationship to the amount of restitution owed to victims pursuant to 18 U.S.C. § 3663. Thus, the Board's argument that it should be awarded an amount equal to that judgment award is unpersuasive. The Probation Department's assumption that the fees which Citarelli and Marucci charged could have been reduced by the amount of the bribes given to Monaco is not supported by the factual record. The fees that doctors can charge for services rendered pursuant to the Workmen's Compensation law are determined by statute, *see* N.J.S.A. § 34:15–15. Accordingly, it cannot be assumed that Marucci and Citarelli could have reduced their fees to reflect the amount of the bribes.

Based upon the foregoing analysis, I conclude that although the Newark Board of Education is a victim of Citarelli's bribery scheme, the loss it suffered for the deprivation of the honest services of its employee is impossible to calculate on the record before me.

### 2. Loss to Citarelli's Former Spouse, C.C.

■ C.C., Citarelli's former spouse, has submitted a Victim Impact Statement which claims losses of $25,000 in legal fees, $6000 in medical expenses (for treatment for depression and anxiety she suffered as a result of Citarelli's fraud), and an unspecified amount in losses incurred as a result of Citarelli's fraudulent underreporting of assets and income on his CIS in the divorce proceedings. Although C.C. has submitted an emotional letter outlining Citarelli's abusive behavior toward her throughout their marriage, C.C. has provided no evidentiary support for any of her claimed expenses.

Citarelli "strenuously objects" to the finding that C.C. is a victim of the underlying fraud, claiming that she was adequately compensated through the divorce settlement, which included: (1) $120,000 in alimony; (2) health insurance for one year from the date of the divorce judgment; (3) a car for which Citarelli paid "several thousand dollars" on the outstanding loan; (4) six months of automobile insurance; (5) half of the household goods, storage fees, and an additional $500 in moving expenses; (6) $90,000 in equitable distribution; and, (7) $4,718, representing half the couple's tax refund. *See* Citarelli Letter Br. of Feb. 4, 2002, at 2. Citarelli further argues that C.C. has somehow "waived" her right to restitution because, although she had the right to reopen the matrimonial case in the Family Court after information from the federal investigation into Citarelli's tax fraud became known, she failed to do so. *Id.*

If I conclude that C.C. is a victim of Citarelli's crimes, then Citarelli argues, I should refrain from awarding restitution because to do so would require this Court to "sit as a family court judge, and [to] try the issue as we would in a family court, which could take days, if not longer." *Id.* at 3. Citarelli urges that:

in view of all the monies that have been paid, and in view of all the circumstances in this case it would seem to counsel pursuant to guidelines [sic] Sec-

tion 5E1.1, there is more than enough basis for the court to determine that the "complication and prolongation of the sentencing process resulting from fashioning such an order outweighs the need to provide restitution [to Mrs. Citarelli] through the criminal process."

*Id.*

I am unpersuaded by these arguments. Citarelli's contention that C.C. is not a victim of his crimes because she was "adequately compensated" in the Family Court misses the point. C.C. was defrauded by Citarelli's scheme to divert and conceal money through the shell corporation, Mag–Dan, in order to underreport his income on tax returns submitted to the IRS and on the CIS submitted to the Family Court.

Citarelli's alternative argument that the determination of the amount of money to which C.C. is entitled is better left to the New Jersey Family Court fails to acknowledge the distinct federal interests which the VWPA is designed to vindicate. In enacting the VWPA, Congress attempted to ensure that victims of federal crimes are made whole to the extent possible, and to compel a criminal to surrender the fruits of his crime. *See United States v. Hand,* 863 F.2d 1100, 1103 (3d Cir.1988)(the legislative history of the federal restitution statutes show that they were intended to "insure that the wrongdoer [be] required to the degree possible to restore the victim to his or her prior state of well-being");

*United States v. Fountain,* 768 F.2d 790, 800 (7th Cir.1985)("the original conception [of restitution] is that of forcing the criminal to yield up to the victim the fruits of the crime. The crime is thereby made worthless to the criminal."). Thus, the federal interest in awarding restitution is both compelling and independent of the state court's interest in ensuring an equitable distribution of property in a divorce proceeding.

Furthermore, as the Government has correctly pointed out, this Court cannot *lightly* decline to award restitution to discernible victims because calculating such an award would be complicated or might prolong the sentencing.[2] As the application note to § 3E1.1 of the 1995 Guidelines, applicable to this case, states:

A court's authority to decline to order restitution is limited. Subsection (a)(1) of this guideline requires the court to order restitution for offenses under Title 18, United States Code, ... unless full restitution has already been made or "the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution ... outweighs the need to provide restitution to any victims." 18 U.S.C. § 3663(d). The legislative history of 18 U.S.C. § 3579, the precursor of 18 U.S.C. § 3663, states that even "[i]n those unusual cases where the precise amount owed is difficult to determine, the section authorizes the court to reach an expeditious, rea-

---

**2.** I note that Citarelli has been released on bail pending this sentencing, and that any delay in this sentencing has been minimal. Furthermore, because a hearing on restitution is not required under the VWPA, this issue has not necessarily prolonged the sentencing process. *See Hand,* 863 F.2d at 1105 ("there is no absolute right to a hearing under the VWPA. The Act only provides that 'any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence.' "). Indeed, on the basis of the extensive briefing and complete record in this case, I concluded that a hearing was not necessary, but invited either party to request oral argument if they felt it necessary. *See* Letter from The Honorable Stephen M. Orlofsky to James B. Nobile and Michael D'Allessio, Jr., of February 13, 2002. The Court heard oral argument on February 22, 2002.

sonable determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim." S.Rep. No. 532, 97th Cong., 2d Sess. 31, reprinted in 1982 U.S.Code Cong. & Ad. News 2515, 2537. U.S.S.G. Sentencing Guidelines Manual § 3E1.1, cmt. background (1995)(amended 1997). Furthermore, this comment suggests that restitution amounts that are reasonable, albeit imprecise, are favored in unusual cases, such as this one, where calculating restitution involves some degree of uncertainty. *See Hand,* 863 F.2d at 1104 ("[d]ifficulties of measurement do not preclude the court from ordering a defendant to compensate the victim through some restitution.").

Citarelli's argument that an award of restitution in this case would require this Court to "sit as a family court" and weigh the thirteen factors in N.J.S.A. § 2A:34–23(b),[3] is misguided. The discrete task before me is to determine the monetary loss suffered by C.C. as a result of Citarelli's fraud. This does not require me to reconfigure the divorce judgment. I must only calculate the effect that knowledge of Citarelli's true assets would have had on that judgment. Arguably, only two of the thirteen enumerated statutory factors, specifically, Citarelli's ability to pay (Factor One) and Citarelli's earning capacity (Factor Five) are relevant to this inquiry. Consideration of these factors will not complicate or prolong this Court's determination, and are, in fact, elements which must be considered under the VWPA as well. *See Maurello,* 76 F.3d at 1316 (the Court must make specific findings as to the defendant's ability to pay).

I am also not dissuaded by Citarelli's argument that he is a defendant in an ongoing state action instituted by his codefendant's former spouse regarding her divorce settlement. The VWPA provides for such an occurrence, by stating that a resti-

---

**3.** N.J.S.A. § 2A:34–23(b) provides, in pertinent part:

In all actions brought for divorce, .... the court may award one or more of the following types of alimony: permanent alimony; rehabilitative alimony; limited duration alimony or reimbursement alimony to either party. In so doing the court shall consider, but not be limited to, the following factors:

(1) The actual need and ability of the parties to pay;

(2) The duration of the marriage;

(3) The age, physical and emotional health of the parties;

(4) The standard of living established in the marriage and the likelihood that each party can maintain a reasonably comparable standard of living;

(5) The earning capacities, educational levels, vocational skills, and employability of the parties;

(6) The length of absence from the job market of the party seeking maintenance;

(7) The parental responsibilities for the children;

(8) The time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, the availability of the training and employment, and the opportunity for future acquisitions of capital assets and income;

(9) The history of the financial or non-financial contributions to the marriage by each party including contributions to the care and education of the children and interruption of personal careers or educational opportunities;

(10) The equitable distribution of property ordered and any payouts on equitable distribution, directly or indirectly, out of current income, to the extent this consideration is reasonable, just and fair;

(11) The income available to either party through investment of any assets held by that party;

(12) The tax treatment and consequences to both parties of any alimony award, including the designation of all or a portion of the payment as a non-taxable payment; and

(13) Any other factors which the court may deem relevant.

N.J.S.A. § 2A:34–23(b)(2000).

tution award can be reduced by any amount later recovered in other proceedings in other forums. *See* 18 U.S.C. § 3664(j)(2)("any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in—(A) any Federal civil proceeding; and (B) any State civil proceeding, to the extent provided by the law of the State.").

Finally, one of the important purposes of the VWPA is to acknowledge and compensate a victim's losses. Thus, this Court's restitution award to C.C. serves to recognize that she, like the IRS, has sustained a loss as a result of Citarelli's criminal actions. This acknowledgment also has an important legal consequence. Section 3664(*l*) of the VWPA provides that:

> [a] conviction of a defendant for an offense involving the act giving rise to the order of restitution shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding or State civil proceeding, to the extent consistent with State law, brought by the victim.

18 U.S.C. § 3664(*l*). If I were to decline to award restitution in this case, the estoppel effect of the VWPA would not become effective.

The Government has sustained its burden of demonstrating the amount of loss suffered by C.C. *See* 18 U.S.C. § 3664(e). It has proposed a workable formula, *see* Gov't Letter Br. of January 18, 2002, at 3–5, supported by the facts in the record, for calculating the difference between the alimony amount that was awarded to C.C. based on the false financial information Citarelli supplied to the Family Court in his CIS, and the sum that would have been awarded had the Superior Court been given an accurate accounting of Citarelli's assets.[4] Citarelli has not proposed an alternative method of calculating restitution, but has opted instead for making the argument that I should defer to the State Court in this matter.

The Government's calculations are as follows. Pursuant to the divorce settlement, Citarelli was to pay $120,000 in alimony at a rate of $2,500 per month for 48 months. $45,000 of this amount has been paid.[5] Citarelli's CIS, signed in March, 1994, stated that his 1993 gross earned income was $130,000 and his present gross monthly earned income was $10,833. Thus, the percentage of Citarelli's monthly gross income which the Superior Court used to determine the alimony figure was 23% ($2,500/$10,833).

Citarelli's CIS, however, failed to disclose $72,828.50 in income that he received in commissions, cashed checks and other

---

**4.** Although I adopt the Government's proposed formula for calculating C.C.'s loss, I do not adopt the Government's application of that formula in its entirety as discussed more fully at note 5, *infra*.

**5.** The Government has determined, and this Court agrees, that the equitable distribution part of the divorce settlement was not implicated by Citarelli's charged fraud. Two of the items subject to equitable distribution, *i.e.*, Citarelli's pension and ownership in FMA's property, were not the subject of the charged fraud. The other two assets subject to equitable distribution, *i.e.*, FMA and Nutley Diag-

nostics, are also not implicated. The FMA valuation was based on the five-year period from 1989 to 1993, a period of time outside the time period of the charged fraud. While the transfer of money from Nutley Diagnostics was part of the fraud scheme, the scheme did not affect the value of the shares, but only the location of those shares during the pendency of the divorce. Thus, the valuation of Nutley Diagnostics would not have been affected by Citarelli's charged fraud. Accordingly, the charged offense conduct generated no loss pertaining to equitable distribution. *See* Gov't Letter Br. of Jan. 18, 2002, at 5.

diversions in 1993, and approximately $282,583.50 in additional gross earned income from the diversion of assets that resulted from the Mag–Dan scheme. Thus, Citarelli underreported his income and assets on the CIS for 1994 by $355,412. Twenty-three percent of this additional unreported income is $81,744.76. Accordingly, I conclude that the total loss to C.C. is $81,744.76.[6]

### 3. Citarelli's Ability to Pay

[7] Pursuant to the VWPA, I must also consider Citarelli's ability to pay restitution to his victims. The Probation Department has calculated Citarelli's Net Worth at $1,303,129 and has determined his net monthly cash flow to be a negative $182.00. Citarelli is currently unemployed and his medical license has been suspended pending the result of this sentencing. I also note that Citarelli has three dependents.

Although Citarelli may not be able to practice medicine again, he is a well-educated and able-bodied 45 year old man, who should be able to become gainfully employed after serving any term of incarceration that this Court may impose. In addition, he has substantial assets, including an IRA account with a balance of over $800,000, two vehicles valued at over $40,000, and real estate valued at over $400,000. Citarelli has not contested the Probation Department's assessment of his net worth. Furthermore, any claim which the IRS has to Citarelli's assets can be asserted only after the other victims of his crimes have received full restitution. *See* 18 U.S.C. § 3664(i)("[i]n any case where the United States is a victim, the court shall ensure that all other victims receive full restitution before the United States receives any restitution."). Thus, Citarelli's ability to pay C.C. will not be impacted by the Government's claim of restitution. Accordingly, I find that Citarelli is able to pay $81,744.76 in restitution to the victim of his offense, his former spouse, C.C. Pursuant to the VWPA, I shall determine the schedule of payments of restitution at the sentencing hearing. *See* 18 U.S.C. § 3664(f)(3)(A).

### IV. CONCLUSION

For the reasons set forth above, I conclude that the Total Offense Level is 21, the Criminal History Category is I, resulting in a Sentencing Guideline Range for Citarelli of 37 to 46 months. I hold that the Newark Board of Education and Citarelli's former ·spouse, C.C., are victims of Citarelli's crimes, however, I find that the Newark Board of Education's loss is incalculable, and that C.C.'s loss is $81,744.76.

---

**6.** Although I have adopted the Government's formula for calculating the loss to C.C., I have not adopted its application of that formula. The Government erroneously applied the 23% figure, which was derived from underreported income and assets from *one year, i.e.,* 1994, to a *four-year* schedule of monthly payments, which yielded an inflated total loss figure of over $200,000. I have, instead, applied the 23% figure to the total amount of income and assets, $355,412, which Citarelli failed to report for the year 1994 only.