828 A.2d 966 (2003)
362 N.J. Super. 494
FRANKLIN MEDICAL ASSOCIATES, a New Jersey Corporation, and North Essex Physical Therapy, a New Jersey Corporation, Plaintiffs,
v.
NEWARK PUBLIC SCHOOLS,[1] Defendant/Third-Party Plaintiff-Respondent/Cross-Appellant,
v.
Donato Marucci, individually and jointly and severally, Third-Party Defendant-Appellant/Cross-Respondent, and
Louis Citarelli, individually and jointly and severally, Third-Party Defendant.
Superior Court of New Jersey, Appellate Division.
Submitted February 20, 2003.
Decided August 8, 2003.
*970 Arleo & Donohue, for appellant/cross-respondent Donato Marucci (Frank P. Arleo, of counsel, Chatham; Mr. Arleo and Dawn M. Donohue, on the brief, Newark).
Porzio, Bromberg & Newman, Morristown, for respondent/cross-appellant Newark Public Schools (Vito A. Gagliardi, Jr., of counsel; Thomas J. Rattay, on the brief).
No other parties participated in this appeal.
Before Judges KESTIN, EICHEN and WEISSBARD. *968
*969 The opinion of the court was delivered by EICHEN, J.A.D.
Third-party defendant Donato Marucci appeals from an order entered on March 23, 2001 permitting third-party plaintiff Newark Public Schools (Newark) to amend its third-party complaint to add Marucci as a third-party defendant, and from an order entered on August 31, 2001 granting summary judgment in favor of Newark in the amount of $180,000. Newark crossappeals from that aspect of the August 31, 2001 order denying it attorney's fees and costs.
Marucci and Louis Citarelli (the doctors) were medical doctors practicing as Franklin Medical Associates, P.A. (Franklin) and North Essex Physical Therapy and Rehabilitation Center, P.A. (Essex) (collectively, the medical practices). They were also approved workers' compensation panel doctors for Newark and, as such, were eligible to treat its administrators, teachers, custodians and clerical staff who had been injured on the job and to receive payment for those services directly from Newark.
On June 12, 1998, the medical practices filed a complaint in the Law Division, seeking to recover unpaid fees for medical and physical therapy services provided to public school employees between 1992 through 1998, pursuant to a contract with Newark. Specifically, Franklin claimed it was owed $213,000 for medical services, while Essex claimed it was owed $142,000 for physical therapy services.
Thereafter, as a result of a criminal investigation, Newark learned that from 1992 through 1996, Citarelli and Marucci had paid bribes in excess of $60,000 to Louis Monaco, Newark's coordinator for workers' compensation, in exchange for Monaco's assistance in "steering" workers' compensation business from Newark to the medical practices and for his further assistance in receiving expedited payment. This conduct formed the basis of Marucci's guilty plea on August 14, 1998, before the United States District Court for the District of New Jersey, to conspiracy to commit bribery in violation of 18 U.S.C.A. § 371, among other crimes not relevant here.[2] During the course of his plea allocution, Marucci admitted that between 1992 through April 1996, he and Citarelli paid bribes in excess of $60,000 to Monaco. He further admitted that these payments *971 were made in exchange for Monaco steering workers' compensation patients to the medical practices and assisting them in obtaining payment from Newark.[3]
On September 24, 1998, Newark filed an answer denying the material allegations of the complaint, and interposing counterclaims seeking to recover damages from the medical practices for, among other things, violations of New Jersey's Racketeer Influenced and Corrupt Organizations Act, N.J.S.A. 2C:41-1 to -6.2 (NJRICO), fraud, unjust enrichment, breach of contract, and breach of the implied covenant of good faith and fair dealing.
On December 20, 1999, following oral argument, Newark was granted leave to file a third-party complaint against Monaco. This complaint was ultimately voluntarily dismissed as part of a settlement between Newark and Monaco.
On March 17, 2000, following limited discovery, Newark moved for summary judgment dismissing the complaint filed by the medical practices on the theory that they were not entitled to recover the illegally procured fees. Newark also sought summary judgment on the issue of liability with respect to a number of its counterclaims, including the counterclaim alleging NJRICO violations. On May 12, 2000, following oral argument, a Law Division judge granted partial summary judgment in favor of Newark, dismissing the complaint in its entirety, with prejudice.[4] The judge reserved decision on Newark's request for summary judgment on its counterclaims.
On June 23, 2000, following oral argument, another Law Division judge (the initial judge)[5] granted Newark's motion for summary judgment on the issue of liability with respect to its counterclaims for unjust enrichment, breach of contract and breach of the implied covenant of good faith and fair dealing. The judge further ordered that the medical practices make restitution to Newark in an amount equal to the combined gross profits that each made from 1992 through 1996 as a result of their contracts with Newark.[6] However, the judge denied Newark's request for summary judgment on its NJRICO counterclaim against the medical practices, as well as its related application to pierce the corporate veil, "at this time, based upon the instant record." According to the initial judge, the NJRICO issue presented questions of fact that she could not decide as a matter of law, and there was insufficient evidence to warrant piercing the corporate veil as a matter of law.[7]
On September 19, 2000, Marucci filed a motion seeking to limit the damages that Newark could recover from the medical *972 practices to the amounts paid as bribes. Newark cross-moved to compel the production of documents from the medical practices. On November 3, 2000, following oral argument, the initial judge denied Marucci's motion to limit damages, and granted Newark's cross-motion for production of documents.
On December 22, 2000, following additional discovery, Newark sought leave to file a third-party complaint asserting aiding-and-abetting claims against Marucci and Citarelli in their individual capacities. On January 17, 2001, Newark moved "to recover fees" incurred as a result of Marucci's failure to comply with certain discovery requests.
On March 23, 2001, following oral argument, a different Law Division judge (the motion judge) granted Newark's fee application to the extent of awarding $435. The motion judge also granted Newark's application for leave to file a third-party complaint against Marucci and Citarelli, concluding that Newark's delay in seeking leave was justified. An order incorporating these rulings was issued that same day.
The first count of the third-party complaint against Marucci alleged, among other things, that he was liable for Monaco's malfeasance under an aiding-and-abetting theory, warranting an award of compensatory damages in the amount of $60,000, the amount of the bribes paid to Monaco. The second count alleged that Marucci was guilty of racketeering activity within the meaning of NJRICO, warranting an award of treble damages, as well as reasonable attorney's fees and costs.
In July 2001, Newark moved for summary judgment on its third-party complaint. Newark's brief urged that summary judgment was warranted because, among other things, the doctors' guilty pleas established that they aided and abetted Monaco's breach of fiduciary duty to Newark. While Newark did not submit any billing records demonstrating its attorney's fees and costs, its brief indicated that it would submit a detailed fee application to the court within thirty days of any ruling in its favor.[8]
On August 31, 2001, following oral argument, the motion judge granted summary judgment to Newark, awarding it $60,000 in damages under the aiding-and-abetting theory of liability, which were then trebled under NJRICO, for a total award of $180,000, payable jointly and severally by Marucci and Citarelli.[9] In awarding summary judgment in favor of Newark on this claim, the motion judge found that once the doctors admitted to bribing Monaco they could be held liable in their individual capacities for treble the amount of the bribes. However, the motion judge denied Newark's application for attorney's fees and costs because of its "failure to submit information on the date of hearing to the court." An order incorporating these rulings was entered that same day. This appeal and cross-appeal followed.
On appeal, Marucci raises the following arguments:
POINT I
THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING NEWARK PUBLIC SCHOOLS' MOTION TO FILE A THIRD-PARTY COMPLAINT AGAINST APPELLANT MARUCCI.
POINT II *973 THE TRIAL COURT'S MISAPPLICATION OF THE MESSERCOLA[10] AND JACLYN[11] DECISIONS EXACTS AN UNFAIR PENALTY UPON DR. MARUCCI WHILE GIVING A WINDFALL TO NEWARK.
POINT III
NEWARK SHOULD NOT HAVE BEEN AWARDED TREBLE DAMAGES SINCE NEWARK WAS NOT ENTITLED TO SUMMARY JUDGMENT ON THE [NJ]RICO COUNT.
In a single point heading, Newark raises the following argument on its cross-appeal:
THE TRIAL COURT ERRED BY DENYING NEWARK'S REQUEST TO MAKE AN APPLICATION FOR ATTORNEY'S FEES AND COSTS UNDER THE [NJ]RICO STATUTE.

I.
Marucci first argues that because Newark did not seek leave to amend the pleadings to join him individually until two and one-half years after the action was commenced, the motion judge abused her discretion in permitting Newark to seek to impose personal liability on him under a new theory. Marucci also maintains that Newark failed to offer any reasonable explanation for the delay in asserting individual claims against him. We disagree.
Our review here is limited. The determination of a motion to amend a pleading is generally left to the sound discretion of the trial court, Balthazar v. Atlantic City Medical Ctr., 358 N.J.Super. 13, 27, 816 A.2d 1059, 1067 (App.Div.), certif. denied, 177 N.J. 221, 827 A.2d 288 (2003), and its exercise of discretion will not be disturbed on appeal, unless it constitutes a "clear abuse of discretion." Salitan v. Magnus, 28 N.J. 20, 26, 145 A.2d 10, 13 (1958).[12]
Rule 4:9-1 sets forth the general rule that while leave of court is required to amend a pleading, motions for leave to amend are to be "freely given in the interest of justice." See also Pressler, Current N.J. Court Rules, comment on R. 4:9-1 (2003) ("[t]he motion for leave to amend is required by the rule to be liberally granted and without consideration of the ultimate merits of the amendment").
Of course, there remains "a necessary area of judicial discretion in denying such motions where the interests of justice require." Young v. Schering Corp., 275 N.J.Super. 221, 232, 645 A.2d 1238, 1244 (App.Div.1994) (quoting Wm. Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J.Super. 277, 299, 375 A.2d 675, 686 (App.Div.), certif. denied, 75 N.J. 528, 384 A.2d 507 (1977)), aff'd, 141 N.J. 16, 660 A.2d 1153 (1995). However, as "the achievement of substantial justice is the fundamental consideration," denial of such a motion in the "interests of justice" is appropriate only when there would be undue prejudice to another party. Jersey City v. Hague, 18 N.J. 584, 602, 115 A.2d 8, 19 (1955); see also Brower v. Gonnella, 222 N.J.Super. 75, 81, 535 A.2d 1006, 1009 (App.Div.1987).
Here, Marucci failed to establish that he would be prejudiced by permitting Newark *974 to assert an individual claim against him. At oral argument, counsel for Newark explained that when the underlying complaint was filed, Newark was unaware of the parameters of the bribery scheme. Accordingly, in addition to filing a counterclaim against the medical practices, counsel for Newark immediately embarked upon a course of discovery designed to uncover facts sufficient to support personal liability against the doctors. According to counsel, Newark did not conceal its intention to seek recovery from the doctors, as evidenced by its previous motion to pierce the corporate veil. Counsel further asserted that Marucci obstructed discovery, requiring Newark to bring a number of discovery motions. Moreover, he maintained that it was only within the past year that Newark became aware that the doctors had stripped the medical practices of their assets. Further, Newark's counsel explained that he did not consider discovery to be complete until he obtained the cooperation of the U.S. Attorney's Office in securing the certification of Monaco.
After stating her intention to permit the proposed claims against the doctors, the motion judge asked counsel for the doctors whether they needed additional discovery. Counsel responded that no further discovery was necessary, stating "we know what we need to know to defend this case."
Given these circumstances, we are satisfied that permitting Newark to assert aiding-and-abetting and NJRICO claims against Marucci in his individual capacity furthered, rather than offended, the interests of justice. It would have been contrary to the public interest to preclude Newark, which was entirely blameless, from recovering from one or more of the participants in the bribery scheme. Further, no additional discovery was required to enable Marucci to present a defense in light of Newark's previous motion for judgment "as a matter of law" on the question of its right to pierce the corporate veil. Thus, in view of Marucci's failure to show undue prejudice and the absence of any history of dilatory tactics by Newark, we perceive no abuse of discretion in the judge's granting Newark's motion to file these two claims against Marucci in his individual capacity.

II.
Marucci next argues that in granting Newark summary judgment awarding damages in an amount equal to the bribes of $60,000, the motion judge misconstrued two decisions: Tp. of Wayne v. Messercola, 789 F.Supp. 1305 (D.N.J.1992) and Jaclyn, Inc. v. Edison Bros. Stores, Inc., 170 N.J.Super. 334, 406 A.2d 474 (Law Div. 1979). According to Marucci, these decisions require a finding that the victim of a bribery scheme sustained "actual harm" before damages can be imposed. Marucci asserts that Newark was not "actual[ly] harm[ed]" because the bribes were merely intended to ensure that he would obtain payment from Newark for his medical services in a timely manner, and because he performed legitimate medical services and was compensated at the contractual rate. Marucci further asserts that the damages award "over-penalizes" him, while constituting a "huge windfall" to Newark again because there was no evidence of actual harm to Newark and because Newark had previously obtained a sizable judgment against the medical practices. Finally, Marucci claims that it was Monaco, and not the doctors, who initiated the bribery scheme. Therefore, Marucci maintains he should not be held liable for Monaco's breach of fiduciary duty. This court has not previously considered these issues.
We address first Marucci's argument that a victim of a bribery scheme must show "actual harm" in order to recover *975 damages. The issue of whether a third party may be required to pay damages for making bribes and the measure of such damages was addressed in the Law Division in Jaclyn, supra, 170 N.J.Super. at 367-68, 406 A.2d at 491. There, the court held that a third party who knowingly aids and abets the agent of another in breach of the agent's fiduciary duty by tendering bribes to the agent is liable to the principal in the amount of the bribes. Id. at 369-70, 406 A.2d at 492-93. The principal is permitted to recover against the third party responsible for making the bribes in recognition of the fact that "[t]he evil of commercial bribery is the invasion of the principal's right to undivided loyalty from his agent which results from secret payments to the agent." Id. at 354, 367-69, 406 A.2d at 485, 491-92. And even though it is not possible to ascertain the actual harm caused to the principal by the third party's inducement of or knowing participation in a breach of duty by the agent, the harm may be measured by "[t]he amount of the bribe paid to the agent." Id. at 369, 406 A.2d at 492 (quoting Continental Mgmt., Inc. v. U.S., 208 Ct.Cl. 501, 527 F.2d 613, 616-17 (1975)). Hence, quantification of actual harm to the principal is not required because the amount of the bribe paid to the agent provides a reasonable measure of damages. Ibid.
A similar conclusion was reached in Messercola, supra, 789 F.Supp. at 1311. In awarding summary judgment on the issue of damages in that case, the District Court noted that once liability for bribery is determined, "damages need not be proved through specific injury." Ibid. Rather, it is sufficient to simply demonstrate the "fact and amount of the bribes." Ibid. (citing Continental Mgmt., supra, 527 F.2d at 618). In accepting the amount of bribes admittedly paid as a proper measure of damages, the District Court stated:
[T]he amount of the bribe is a reasonable measure of damage because it is "the value the [briber] placed on the corruption of the [bribee's] employee[s]; on the other side ... is that the [briber] hoped and expected to benefit by more than the sum of the bribes." ... [S]o long as double recovery is not awarded for the bribes, the aider and abettor who is a joint tortfeasor with the agent is "jointly liable to the principal for the agent's secret profits."
[Ibid. (quoting Continental Mgmt., supra, 527 F.2d at 617-19).]
These decisions recognize the general rule reported in Restatement (Second) of Agency § 312, that "[a] person who . . . intentionally causes or assists an agent to violate a duty to his principal is subject to liability to the principal." See also 3 Am.Jur.2d Agency §§ 287-89 (2003 Supp.) (same principle); Hirsch v. Schwartz, 87 N.J.Super. 382, 390, 209 A.2d 635 (App. Div.1965) (recognizing applicability of § 312 in the instance of an agent's divulgence of confidential information to a third party at the third party's behest).
Restatement (Second) of Agency § 312 does not address the measure of damages in the instance of a bribe. However, two other Restatement sections are helpful in this regard. Restatement (Second) of Agency § 403 provides that where an agent receives a bribe, a principal may recover damages from the agent in the amount of the bribe. See also Hague, supra, 18 N.J. at 595-96, 115 A.2d at 14-15. Restatement (Second) of Torts § 876, in turn, provides that a person who aids and abets the commission of a tort is jointly and severally liable for the resultant damages.
Applying these principles, we hold that a person who bribes an agent of a principal has "aided and abetted" the agent in the breach of the agent's fiduciary duty of *976 loyalty to the principal. In such an instance, the principal, without demonstrating an actual loss, may recover damages from the aider and abettor measured by the amount of the bribe so long as it is not a double recovery of the bribe.[13]
Thus, inasmuch as Marucci admitted paying the bribes to Monaco, the motion judge properly awarded damages in favor of Newark measured by the amount of the bribes paid by Marucci to Monaco, namely, $60,000. Because Newark was denied the honest and legitimate services of its employee, Monaco, it is deemed to have suffered damages in that amount as a result of the bribery scheme. Jaclyn, supra, 170 N.J.Super. at 367-68, 406 A.2d at 491-92.
We reject Marucci's contention that Newark realized a "windfall" because it obtained other judgments in its favor. Previously, the initial judge granted summary judgment dismissing the medical practices' complaint against Newark for $335,000 in unpaid fees because recovery of such illegally procured fees was precluded. In addition, the initial judge required the medical practices to disgorge any profits derived from the illegal scheme under theories of unjust enrichment, restitution, breach of contract, and breach of the implied covenant of good faith and fair dealing. These legal theories are distinct from those underlying the aiding-and-abetting claim. The former claims are predicated upon the medical practices' obtaining the benefits of contracts to which they are not legally entitled, while the aiding-and-abetting claim is predicated upon providing compensation to Newark for the loss of its agent's loyalty. Thus, even assuming that Newark is able to recover its judgment against the medical practices, this does not relieve Marucci of his independent liability to Newark as an "aider and abettor" of Monaco's breach of fiduciary duty. See Messercola, supra, 789 F.Supp. at 1311; Jaclyn, supra, 170 N.J.Super. at 368, 406 A.2d at 491. Accordingly, Newark was properly awarded summary judgment on its "aiding-and-abetting" claim against Marucci in the amount of $60,000.

III.
Marucci next argues that the motion judge erred in awarding Newark treble damages pursuant to NJRICO because the judge was bound by the "law of the case" doctrine to adhere to the initial judge's prior ruling that NJRICO liability was an issue of fact. Alternatively, Marucci maintains that several questions of fact exist precluding summary judgment on the NJRICO claim. In particular, Marucci claims that there was insufficient evidence to establish two elements of a NJRICO violation, namely "a pattern of racketeering" and the "existence of an enterprise." Marucci also claims that there was no evidence establishing that the alleged racketeering scheme was the proximate cause of any losses by Newark.
We address first Marucci's contention that the motion judge was bound by the initial judge's prior ruling under the doctrine of the law of the case. Under that doctrine, prior decisions on identical legal issues in the same case should be followed unless the prior decision was clearly erroneous. See State v. Reldan, 100 N.J. 187, 203, 495 A.2d 76, 85 (1985) (as a general matter, "decision[s] of law made in a particular case [are] to be respected by all other lower or equal courts during the pendency of that case"); see also Sisler v. Gannett Co., Inc., 222 *977 N.J.Super. 153, 159-60, 536 A.2d 299, 302-03 (App.Div.1987) (same principle), certif. denied, 110 N.J. 304, 540 A.2d 1283 (1988). The doctrine is grounded in the policy that once an issue is litigated and decided in a lawsuit, relitigation of that issue should be avoided if possible. Ibid.
However, "the law of the case doctrine, unlike the doctrine of res judicata, operates as a discretionary rule of practice and not one of law." Brown v. Tp. of Old Bridge, 319 N.J.Super. 476, 494, 725 A.2d 1154, 1163 (App.Div.) (citing Slowinski v. Valley Nat'l Bank, 264 N.J.Super. 172, 179, 624 A.2d 85, 88 (App.Div.1993)), certif. denied, 162 N.J. 131, 741 A.2d 99 (1999). Moreover, "a denial of summary judgment is always interlocutory, and never precludes the entry of judgment for the moving party later in the case." Hart v. City of Jersey City, 308 N.J.Super. 487, 498, 706 A.2d 256, 261 (App.Div.1998); see also Johnson v. Cyklop Strapping Corp., 220 N.J.Super. 250, 257, 531 A.2d 1078, 1081 (App.Div.1987), certif. denied, 110 N.J. 196, 540 A.2d 189 (1988).
Here, the issue determined by the initial judge's ruling concerned Newark's NJRICO claims against the medical practices, not Marucci. Further, the initial judge's ruling was a denial of a motion for summary judgment. Applying the foregoing principles, the motion judge did not misapply her discretion in disregarding the initial judge's prior ruling when called upon to resolve the NJRICO claim against Marucci.
Nor are there genuine issues as to any material facts precluding summary judgment in favor of Newark on its NJRICO claim against Marucci and the imposition of treble damages. Under NJRICO, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity...." N.J.S.A. 2C:41-2(c) (emphasis added). "Racketeering activity" includes the crime of bribery[14] as defined under New Jersey law or the laws of any other jurisdiction. N.J.S.A. 2C:41-1(g).
Contrary to Marucci's contention, there was sufficient evidence to establish a "pattern of racketeering activity" as a matter of law. A "pattern of racketeering activity" requires "[e]ngaging in at least two incidents of racketeering conduct" that "embrace criminal conduct" and are interrelated. N.J.S.A. 2C:41-1(d). Marucci's guilty plea established that he engaged in a pattern of racketeering activity because, by his own admission, Marucci was involved in at least thirty-three separate instances of bribery of a government employee.
There was also sufficient evidence to establish the existence of an "enterprise." Under NJRICO, an "enterprise" includes "any union or group of individuals associated in fact although not a legal entity, and it includes illicit as well as licit enterprises and governmental as well as other entities." N.J.S.A. 2C:41-1(c). Under NJRICO, "the `enterprise' element will be satisfied if there exists a group of people, no matter how loosely associated, whose existence or association provides or implements the common purpose of committing two or more predicate acts." State v. Ball and Big Apple Leasing Co., 268 N.J.Super. 72, 143, 632 A.2d 1222, 1259 (App.Div.1993), aff'd, 141 N.J. 142, 661 A.2d 251 (1995), cert. denied, 516 U.S. *978 1075, 116 S.Ct. 779, 133 L.Ed.2d 731 (1996); see also Maxim Sewerage Corp. v. Monmouth Ridings, 273 N.J.Super. 84, 89, 640 A.2d 1216, 1218 (Law Div.1993) (noting that the Ball court adopted a broader interpretation of "enterprise" in NJRICO than in the federal analogue, in view of the liberal construction that must be given to NJRICO pursuant to N.J.S.A. 2C:41-6). Marucci's guilty plea established that Marucci, Citarelli and Monaco were associates for the common purpose of using the medical practices and Newark to effect a bribery scheme.
Nor is Marucci's claim that Newark failed to show that the bribery scheme was a proximate cause of any actual losses sufficient to warrant reversal of the grant of summary judgment to Newark. N.J.S.A. 2C:41-4(c) provides in pertinent part that "[a]ny person damaged in his business or property by reason of a violation of N.J.S.[A.] 2C:41-2 may sue therefor in any appropriate court and shall recover threefold any damages he sustains...." (Emphasis added.) Interpreting this provision in Interchange State Bank v. Veglia, 286 N.J.Super. 164, 178, 668 A.2d 465, 472 (App.Div.1995) (citations omitted), certif. denied, 144 N.J. 377, 676 A.2d 1092 (1996), this court held that "[i]n order to establish standing to institute a civil action under NJRICO, it must be shown that `plaintiff's harm was proximately caused by the NJRICO predicate acts alleged, i.e., that there was a direct relationship between plaintiff's injury and defendant's conduct.' " This requires a showing not only that the offender's alleged NJRICO violation was the "but for" cause of the plaintiff's injury, but also that the violation was the proximate cause. Ibid. (citing Holmes v. Sec. Investor Protection Corp., 503 U.S. 258, 265, 268, 269-70, 112 S.Ct. 1311, 1316-18, 117 L.Ed.2d 532, 543, 544-45, 548 (1992) (requiring a showing of direct injury to demonstrate standing in light of the difficulty of ascertaining damages where the cause is indirect)).
Hence, in determining whether proximate cause has been demonstrated, the court must examine the chain of events to determine who was directly injured by the predicate NJRICO acts. Interchange State Bank, supra, 286 N.J.Super. at 180, 668 A.2d at 473. If a plaintiff is harmed only in an indirect way by the acts constituting the predicate NJRICO violation, the plaintiff does not have standing to pursue a civil NJRICO claim. Ibid.; accord Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303, 1311 (9th Cir.1992), cert. denied, 507 U.S. 1004, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993); Prudential Ins. Co. of Am. v. U.S. Gypsum Co., 828 F.Supp. 287, 296 (D.N.J.1993).
Applying this proximate cause analysis, we are convinced that Newark satisfied its burden of establishing that Marucci's actions were the proximate cause of the injury asserted. Marucci's plea proceeding unequivocally established that as a result of his bribery of Monaco, Newark was deprived of the honest, albeit incalculable, services of Monaco. Hence, Newark was a direct, rather than a remote, victim of the bribery scheme. Moreover, there is no difficulty in ascertaining at least a minimal amount of damages attributable to the NJRICO violation when measured by the amount of the bribes. Having established a violation of NJRICO which resulted in $60,000 in damages, Newark was entitled to have its award trebled pursuant to N.J.S.A. 2C:41-4(c). Allowing Newark to recover is also consistent with the statutory mandate for liberal construction of NJRICO. See N.J.S.A. 2C:41-6.

IV.
To the extent Marucci has made additional arguments on this appeal which have *979 not been expressly addressed in this decision, we have considered those arguments and have rejected them as without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

V.
On its cross-appeal, Newark maintains that the court erred in denying its application for attorney's fees and costs under NJRICO. According to Newark, its request to make an application for attorney's fees and costs following the motion judge's resolution of its NJRICO claim was reasonable because the legal work could not have been completed until that time. Newark further contends that because it requested attorney's fees and costs prior to entry of the order finally determining this matter, and because it was clearly entitled to such an award under NJRICO, it should have been afforded time to submit its affidavit of services following entry of the order.
Newark's third-party complaint included a request for an award of reasonable attorney's fees and costs under NJRICO. In support of its motion for summary judgment, Newark filed a brief indicating that it would submit a detailed fee application to the court within thirty days of a ruling in its favor. Following the court's oral ruling in its favor on the NJRICO claim, counsel reiterated Newark's intention to seek costs of suit under NJRICO. The motion judge responded that counsel "should have had everything up until today in the papers, and then just supplement[ed] it." Accordingly, the judge denied the application. The court's rationale was memorialized in its order, issued that same day, which provides that "Newark is not entitled to recover its attorney's fees...for failure to submit information on the date of hearing to the court."
N.J.S.A. 2C:41-4(c) provides in pertinent part that "[a]ny person damaged in his business or property by reason of a violation of N.J.S.[A.] 2C:41-2 may sue therefor in any appropriate court and shall recover threefold any damages he sustains and the cost of the suit, including a reasonable attorney's fee, costs of investigation and litigation." (Emphasis added.) The foregoing civil penalty provision is in keeping with the legislative mandate of NJRICO to protect the public interest by providing "that activity which is inimical to the general health, welfare and prosperity of the State and its inhabitants be made subject to strict civil and criminal sanctions." N.J.S.A. 2C:41-1.1(c) (emphasis added).
We are convinced based on the circumstances presented that the motion judge misapplied her discretion in denying Newark's request to supplement its application for fees with an affidavit of services. Although R. 4:42-9(d) provides that "[a]n allowance of fees made on a determination of a matter shall be included in the judgment or order stating the determination," this court has construed this provision in other contexts as merely requiring that the fee application be presented before the entry of final judgment, or, within ten days thereafter by a motion to amend the judgment.[15]See, e.g., Czura v. Siegel, 296 N.J.Super. 187, 190, 686 A.2d 390 (App.Div.1997) (fee award under N.J.S.A. 2A:15-59.1).
Here, Newark requested an attorney's fee award pursuant to the NJRICO damages provision in both its original pleading and in connection with its summary judgment *980 motion. While Newark had not yet provided an affidavit of services at the time of the court's determination, it had clearly stated its intention to do so at the court's direction. Accordingly, other than calendar control considerations, the motion judge had no basis for disallowing Newark to make a motion to amend the judgment. While calendar control considerations may be entitled to substantial weight, the public policy considerations underlying the NJRICO damages provision strongly militate in favor of allowing Newark to recover attorney's fees and costs of suit. This is particularly so given that the medical practices initiated the litigation against Newark in an attempt to further enrich their principals, the doctors, at public expense, and given that they did not cooperate with Newark's discovery demands. Accordingly, we reverse that aspect of the order of August 31, 2001 denying Newark the opportunity to apply for attorney fees and costs pursuant to the NJRICO damages provision.[16]
The order of March 23, 2001 is affirmed. The order of August 31, 2001 is affirmed in part, reversed in part, and the matter is remanded to allow Newark to file a motion to amend the judgment, supported by an affidavit of services, to include attorney's fees and costs. The motion shall be made within twenty days of receipt of this opinion or the request for such fees and costs shall be deemed abandoned. We do not retain jurisdiction.
NOTES
[1] This party was incorrectly designated as the Newark Board of Education in the original complaint filed in this matter.
[2] Marucci was sentenced on May 17, 2002. Citarelli's sentencing was the subject of a published opinion. See United States v. Citarelli, 187 F.Supp.2d 244 (D.N.J.2002).
[3] The federal criminal information concerning Monaco alleged that he "steered" over $1,000,000 in workers' compensation business to the doctors.
[4] The medical practices have not appealed from the order dismissing their complaint for unpaid fees.
[5] There were at least three Law Division judges who handled motions in this case. Although the Law Division judge who decided this motion is not the first judge to rule on such motions, we refer to this judge as the "initial judge" for clarity and ease of reference.
[6] According to Newark, it cannot recover pursuant to this judgment because discovery revealed that the medical practices had been stripped of all their assets by the doctors. When FBI agents searched Marucci's residence, they found approximately $750,000 in cash hidden in coffee cans. Post-judgment discovery in the criminal proceedings established Marucci's net worth as $893,551, not including the cash seized by the FBI.
[7] Newark has not appealed from this order and it does not appear that it ever renewed its motion following completion of discovery.
[8] No opposition from Marucci is contained in the parties' appendices.
[9] Newark states that it subsequently entered into a settlement with Citarelli.
[10] Tp. of Wayne v. Messercola, 789 F.Supp. 1305 (D.N.J.1992).
[11] Jaclyn, Inc. v. Edison Bros. Stores, Inc., 170 N.J.Super. 334, 406 A.2d 474 (Law Div. 1979).
[12] Newark's motion should have been made under R. 4:9-1 (to join additional parties to its counterclaim) instead of R. 4:8-1 (to join a third party) because the underlying complaint had already been dismissed by the initial judge and the litigation was proceeding solely on Newark's counterclaims. Nonetheless, the same standard of review applies.
[13] Notably, Marucci never asserted that Monaco's settlement with Newark included repayment of the bribe.
[14] Marucci does not dispute that Newark established bribery as the predicate NJRICO violation by virtue of his guilty plea in federal court.
[15] Effective September 1, 1998, the time period in which motions to amend judgments could be made was extended to twenty days. See R. 4:49-2; see also Pressler, Current N.J. Court Rules, comment on R. 4:42-9 (2003).
[16] Preferably, in the future, litigants will follow the better course of submitting an affidavit of services along with a motion for fees, rather than moving to amend a judgment.